EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Miramar Marine, Inc.; Luis A. García Gómez y otros<br><br>Peticionarios<br><br>v.<br><br>Citi Walk Developmet Corporation; McCloskey, Pérez & Asociados, Inc. y otros<br><br>Recurridos | Certiorari<br><br>2017 TSPR 141<br><br>198 DPR ____ |

Número del Caso: CC-2015-609


Fecha: 27 de julio de 2017


Tribunal de Apelaciones:
        Región Judicial de San Juan

Abogados de la parte peticionaria:
        Lcdo. José Andreu Fuentes
        Lcdo. Pedro López Bergollo
        Lcdo. Francisco Ramos Martínez


Abogados de la parte recurrida:

        Lcdo. Alfredo Fernández Martínez
        Lcda. Marie Lynn Quiñones Tañón
        Lcdo. Juan M. Cordero Morales

Materia: Corporaciones: Al expirar para una corporación disuelta el término dispuesto por el Art. 9.08 de la Ley General de Corporaciones, el único remedio que existe para liquidar cualquier propiedad que aun posea la corporación disuelta es el procedimiento dispuesto por el Art. 9.09 de la Ley General de Corporaciones.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Miramar Marine, Inc.; Luis A. García Gómez y otros

      Peticionarios

         v.

Citi Walk Development Corporation; McCloskey, Pérez & Asociados, Inc. y otros

      Recurridos

CC-2015-0609

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 27 de julio de 2017.

La controversia que tenemos ante nuestra consideración requiere que analicemos en conjunto los Arts. 9.08 y 9.09 de nuestra Ley General de Corporaciones, 14 LPRA secs. 3708 y 3709. Luego de estudiar y analizar los artículos antes mencionados revocamos la sentencia emitida por el Tribunal de Apelaciones.

I

Miramar Marine, Inc. (Miramar Marine) fue una corporación con fines de lucro incorporada al amparo de la Ley General de Corporaciones de Puerto Rico, 14 LPRA secs. 3501 et seq. Esta vendió una propiedad inmueble a Hogares, S.E., mediante escritura pública,

el 30 de diciembre de 2005. Como parte de la transacción, Hogares S.E. otorgó un pagaré al portador a favor de Miramar Marine por la cantidad de $1,625,000. Este pagaré fue garantizado con una primera hipoteca sobre la propiedad adquirida por Hogares, S.E. en la transacción de compraventa, la cual fue debidamente inscrita en el Registro de la Propiedad.

El 27 de diciembre de 2007 Hogares S.E. vendió, mediante escritura pública, la propiedad inmueble en cuestión a Citi Walk Development Corp. (Citi Walk), sin que hubiere saldado su deuda con Miramar Marine. Sin embargo, Miramar Marine consintió a que Citi Walk asumiera el pago de la deuda que existía entre ellos y Hogares S.E. Asimismo, Miramar Marine aceptó permutar a un segundo rango la hipoteca que tenía sobre el inmueble, con el propósito de que Eurobank pudiera garantizar el préstamo otorgado a Citi Walk para que pudiera adquirir la propiedad. Además, Citi Walk y Miramar Marine acordaron extender a veinte años la vigencia de la hipoteca a favor de Miramar Marine. Por otro lado, establecieron que el interés sobre el monto principal de la deuda iba a ser de 8.25% hasta el 30 de junio de 2008 y a partir de esta fecha el interés aumentaría a 8.50%, hasta que se pagara la deuda en su totalidad. También, acordaron aumentar el principal de la deuda por $75,000, para lo que se emitió un pagaré adicional. Finalmente, Urbanus Development, Inc. y McCloskey Pérez y Asociados, Inc. garantizaron, por partes

iguales, el pago del principal e intereses de la deuda asumida por Citi Walk, así como las penalidades y los honorarios pactados en la hipoteca. Sin embargo, como veremos más adelante, Citi Walk incumplió con estos acuerdos.

Citi Walk incumplió con los pagos del préstamo que realizó con Eurobank para adquirir la propiedad. Por ello, Oriental Bank, quien era el dueño del crédito en controversia para el tiempo de la reclamación, presentó una demanda sobre cobro de dinero y ejecución de hipoteca. El foro primario dictó sentencia a favor de Oriental Bank el 20 de abril de 2012. Además, el Tribunal de Primera Instancia, como parte del proceso de ejecución de hipoteca, ordenó la cancelación de la hipoteca de Miramar Marine, la cual, como mencionamos anteriormente, se encontraba en segundo rango.

Por su parte, Miramar Marine quedó disuelta en abril de 2008 y, como consecuencia, comenzó su proceso de liquidación. Como parte de ese proceso, Miramar Marine realizó una serie de reclamaciones extrajudiciales contra Citi Walk desde comienzos del 2009, con el propósito de que Citi Walk le pagara el dinero adeudado por la propiedad que le había vendido a Hogares S.E., y que Citi Walk le había comprado a Hogares S.E. Finalmente, Miramar Marine logró un acuerdo con F & R Construction, Corp., en donde estos últimos se comprometieron a continuar con los pagos. Sin

embargo, F & R Construction Corp. dejó de cumplir con los pagos en noviembre de 2012.

Como consecuencia, Miramar Marine y sus accionistas, Luis A. García Gómez, Marisol N. de García, Rafael Nevares Bengochea y Marta Burgos de Nevares, presentaron una demanda ante el Tribunal de Primera Instancia el 24 de septiembre de 2013 contra McCloskey, Pérez & Asociados, Inc.; Citi Walk Development Corporation; Luis Pérez Pagán, su esposa Gloria Tañón Ortiz y la sociedad legal de bienes gananciales compuesta por ambos; Joseph McCloskey Vázquez, su esposa Stacy Suárez Kiley y la sociedad legal de bienes gananciales compuesta por ambos; Urbanus Development, Inc.; TN Development Corp.; F & R Construction, Corp.; Jaime Fullana Olivencia, su esposa Jossette Lefranc Romero y la sociedad legal de bienes gananciales compuesta por ambos; Ángel Antonio Fullana, su esposa Lydia Morales Cobián y la sociedad legal de bienes gananciales compuesta por ambos; José Miguel Fullana Olivencia, su esposa María Milagros Morales López y la sociedad legal de bienes gananciales compuesta por ambos, y Oriental Bank (Oriental). La demanda se instó al amparo del Art. 9.08 de la Ley General de Corporaciones, supra. Como consecuencia de la demanda, McCloskey, Pérez & Asociados, Inc.; Citi Walk Development Corporation; Luis Pérez Pagán, su esposa Gloria Tañón Ortiz y la sociedad legal de bienes gananciales compuesta por ambos; Joseph McCloskey Vázquez, su esposa Stacy Suárez Kiley y la sociedad legal de bienes gananciales compuesta

por ambos (McCloskey) presentaron una moción de desestimación el 10 de diciembre de 2013. Alegaron que los demandantes dejaron de exponer una reclamación que justifique la concesión de un remedio, debido a que al momento de presentarse la demanda la corporación no tenía capacidad jurídica para ser demandada. Regla 10.2 de las Reglas de Procedimiento Civil, 32 LPRA AP. V. Se basaron en que había transcurrido el término de tres años que permite el Art. 9.08 de la Ley General de Corporaciones, supra, para presentar reclamaciones. De esta misma forma arguyeron que, los accionistas tampoco presentaron su reclamación dentro del periodo de tres años dispuestos por el Art. 9.08 de la Ley General de Corporaciones, supra. Por su parte, los co-demandados Urbanus Development, Inc.; TN Development Corp.; F & R Construction, Corp.; Jaime Fullana Olivencia, su esposa Jossette Lefranc Romero y la sociedad legal de bienes gananciales compuesta por ambos; Ángel Antonio Fullana, su esposa Lydia Morales Cobián y la sociedad legal de bienes gananciales compuesta por ambos; José Miguel Fullana Olivencia, su esposa María Milagros Morales López y la sociedad legal de bienes gananciales compuesta por ambos (Urbanus), se unieron a la moción de desestimación presentada por McCloskey. Finalmente, Oriental radicó, también, una moción de desestimación en la que hizo alegaciones similares a las de McCloskey y Urbanus. Por su parte, el Tribunal de Primera Instancia proveyó no ha lugar a las mociones de desestimación el 24 de noviembre de 2014.

Este foro concluyó que el término "acción" contenido en el Art. 9.08 de la Ley General de Corporaciones, <u>supra</u>, incluye reclamaciones extrajudiciales. En específico indicó:

>    [U]na corporación que presenta una acción durante el período de sobrevivencia, en la forma de reclamación extrajudicial, puede proseguir con la misma luego de expirado dicho término y llevarla hasta su conclusión, aun cuando ello requiera convertir la reclamación de extra judicial en judicial. Véase, <u>Resolución y Orden del 14 de noviembre de 2014</u>, pág. 13.

Urbanus y Oriental acudieron al Tribunal de Apelaciones, en donde cada una presentó un recurso de certiorari. Ante esto, Miramar Marine se opuso a que se expidiera el auto y planteó que en caso de resolver que la corporación no tenía capacidad jurídica para hacer el reclamo, entonces los accionistas podían hacerlo, pues los bienes de una corporación pasaban directamente a ellos cuando la misma se disolvía. Eventualmente, el foro apelativo intermedio revocó al foro primario e indicó que el Art. 9.08 de la Ley General de Corporaciones, <u>supra</u>, solo contempla acciones judiciales y no extrajudiciales, por lo que cualquier reclamación judicial tenía que presentarse en el periodo de tres años que indica el mencionado artículo. Asimismo, en una nota al calce concluyó que los accionistas de la corporación no podían demandar, ya que luego del periodo dispuesto en el Art. 9.08 de la Ley General de Corporaciones, <u>supra</u>, no puede hacerse ninguna reclamación.

Ante este resultado, Miramar Marine y sus accionistas comparecen ante este foro y plantean que Miramar Marine tiene legitimación para reclamar, ya que instó una reclamación extrajudicial dentro del plazo de tres años del Art. 9.08 de la Ley General de Corporaciones, supra. También, en la alternativa señaló que, si se resuelve que el plazo de tres años expiró, los activos de Miramar Marine, incluyendo la acreencia reclamada, pasaron a ser propiedad de los accionistas al liquidarse la corporación. Como consecuencia, inicialmente notificamos una Resolución en la que denegamos la expedición del Certiorari. No obstante, en reconsideración, y luego de evaluar la misma, decidimos expedir el auto de Certiorari. Así pues, luego de haber analizado y estudiado los alegatos de las partes procedemos a resolver las controversias que tenemos ante nuestra consideración.

II

La figura de la corporación nace con el motivo de facilitar y promover las actividades comerciales. Exposición de Motivos de la Ley General de Corporaciones, Ley Núm. 164-2009,(2009 (Parte 2) Leyes de Puerto Rico). Véase también, Santiago et al. v. Rodríguez et al., 181 DPR 204, 215 (2011). Por eso, una de las características principales de la corporación es que cuenta con una personalidad jurídica distinta y separada de la de sus dueños. Íd. Véase también, C.E. Díaz Olivo, Corporaciones: Tratado sobre Derecho Corporativo, Colombia, [s. Ed], 2016,

págs. 2, 45; M. Muñoz Rivera, Ley de Corporaciones de Puerto Rico: Análisis y Comentarios, 1ra ed., San Juan, Ed. Situm, 2015, pág. 7. Además, la personalidad jurídica se extiende hasta que la corporación deja de existir.

Por otra parte, la disolución es el proceso mediante el cual se pone fin a la existencia de la corporación. En otras palabras, la disolución equivale a la "muerte jurídica de la corporación". Díaz Olivo, op. cit., pág. 371. El Capítulo IX de nuestra Ley General de Corporaciones, 14 LPRA sec. 3701 et seq., regula el proceso de disolución de una corporación en Puerto Rico. Junto con la disolución comienza el proceso de liquidación del ente corporativo. Durante este proceso, "[l]a corporación, entre otras cosas, tiene antes que pagar las obligaciones pendientes, cobrar sus acreencias y distribuir cualquier sobrante entre los accionistas, de conformidad a las prioridades que sus acciones les confieren.". Díaz Olivo, op. cit., págs. 381-382.

Para poder comprender mejor las consecuencias jurídicas de la disolución de la corporación, es necesario recordar que nuestro derecho corporativo proviene del common law, específicamente del estado de Delaware. Exposición de Motivos de la Ley General de Corporaciones, supra. Por esa razón, hemos expresado que las interpretaciones que hagan los tribunales de Delaware sobre su Ley General de Corporaciones tienen valor ilustrativo y persuasivo en esta jurisdicción, al igual que las

interpretaciones que hayan hecho otros estados de la legislación corporativa de Delaware. Llorens et al. v. Arribas et al., 184 DPR 32, 49-50 (2011). Es importante tener esto en cuenta debido a que en el common law, la disolución de una corporación, como la muerte de una persona natural, terminan con la capacidad jurídica que esta tiene para demandar y ser demandada. Por consiguiente, se terminan todos los litigios que la corporación tenía pendiente. A estos efectos, el Tribunal Supremo de Estados Unidos ha expresado:

> There is no specific provision in our rules for the substitution as a party litigant of a successor to a dissolved corporation. It is well settled that at common law and in the federal jurisdiction a corporation which has been dissolved is as if it did not exist, and the result of the dissolution cannot be distinguished from the death of natural person in its effect. It follows, therefore, that as the death of the natural person abates all pending litigation to which such a person is a party, dissolution of a corporation at common law abates all litigation in which the corporation is appearing either as plaintiff or defendant.(Citas omitidas) Oklahoma Natural Gas Co. v. State of Oklahoma, 273 U.S. 257, 259 (1927).

Véase también, In re Citadel Industries, Inc., 423 A.2d 500, 503 (Del. Ch. 1980); 16A Fletcher, Fletcher Cyclopedia of the Law of Corporations Sec. 7966, (2012).

En Puerto Rico, los efectos de la disolución de una corporación son distintos a los de la muerte de una persona natural. En nuestra jurisdicción, el efecto de la muerte de una persona natural es que los herederos se subrogan por operación de ley en los derechos del causante, salvo repudio o rechazo de la masa hereditaria. E. González

Tejera, Derecho de sucesiones: La sucesión intestal, San Juan, Ed. Universidad de Puerto Rico, 2001, T. 1, pág. 31. En otras palabras, opera una sucesión civil, la cual no cuenta con una personalidad jurídica propia. Kogan v. Registrador, 125 DPR 636, 656 (1990). Por lo tanto, sería erróneo ver a los accionistas de una corporación disuelta como los herederos de los activos y pasivos de la entidad.

Sin embargo, en aras de culminar el proceso de liquidación, las legislaciones corporativas han adoptado los llamados survival statutes. Véase, In re Citadel Industries, supra, pág. 503; Fletcher, supra, págs. 9-10. En Puerto Rico, el Art. 9.08 de la Ley General de Corporaciones, supra, extiende la personalidad jurídica de la corporación por un plazo de tres (3) años contados a partir de su disolución. Ese artículo indica:

> Toda corporación que se extinga por limitación propia o que por otro modo se disuelva, continuará como cuerpo corporativo por un plazo de tres (3) años a partir de la fecha de extinción o de disolución o por cualquier plazo mayor que el Tribunal de Primera Instancia (Sala Superior) en el ejercicio de su discreción disponga a los efectos de llevar adelante los pleitos entablados por la corporación y de proseguir con la defensa de los pleitos entablados contra ella, ya sean civiles, criminales o administrativos, así como a los efectos de liquidar y terminar el negocio, de cumplir con sus obligaciones y de distribuir a los accionistas los activos restantes. No podrá continuar la personalidad jurídica con el propósito de continuar los negocios para los cuales se creó dicha corporación.
> Respecto a cualquier acción, pleito o procedimiento entablado o instituido por la corporación o contra ella, antes de su extinción o dentro de los tres (3) años siguientes a su extinción o disolución, **la corporación continuará como entidad corporativa después del plazo de los**

**tres (3) años y hasta que se ejecuten totalmente cualesquiera sentencias, órdenes o decretos respecto a las acciones, pleitos o procedimientos antes expresados, sin la necesidad de ninguna disposición especial a tal efecto por parte del Tribunal de Primera Instancia (Sala Superior).**(Énfasis nuestro.)

Esta disposición es una copia de la Sec. 278 de la Ley General de Corporaciones de Delaware, 8 Del. C. Sec. 278.[1]

Por otro lado, nuestra legislación corporativa contempla la posibilidad de que expirado el plazo dispuesto por el estatuto de supervivencia, quede patrimonio de la corporación sin distribuir. Específicamente el Art. 9.09 de la Ley General de Corporaciones de 2009, supra, indica:

---

[1] La Sec. 278 de la Ley General de Corporaciones de Delaware, supra, indica:

> All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation; the corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the 3-year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery.

Cuando se disolviere alguna corporación con arreglo a las disposiciones de este subtítulo, el Tribunal de Primera Instancia (Sala Superior), **en cualquier momento** y a petición de cualquier acreedor o de cualquier accionista o director de la corporación, o a petición de cualquiera que a juicio del tribunal muestre justa causa para ello, podrá nombrar como síndico a uno o varios de los directores de la corporación o designar administrador judicial a una o más personas, en representación de y para beneficio de la corporación, para que tales administradores judiciales o síndicos se hagan cargo del patrimonio de la corporación y cobren los créditos y recobren los bienes de la corporación con poder de demandar y defender, a nombre de la corporación, para entablar todos los litigios que sean necesarios para los propósitos antes expuesto[s], y para nombrar agente o agentes bajo sus órdenes y para ejecutar todos los actos que la corporación realizaría, si existiera y que sean necesarios para

la liquidación final de los asuntos corporativos pendientes. Las facultades de los administradores judiciales y los síndicos podrán prorrogarse por el tiempo que el Tribunal de Primera Instancia (Sala Superior) estime necesario para los fines antes mencionados. (Énfasis nuestro).

Cuando miramos la Ley General de Corporaciones de Delaware encontramos que nuestro Art. 9.09 de la Ley General de Corporaciones, supra, es una copia de la Sec. 279 de la ley General de Corporaciones de Delaware, 8 Del. C. sec. 279.[2]

El propósito principal de la Sec. 279 de la Ley General de Corporaciones de Delaware, supra, es "salvaguardar el recobro y la administración de los aún existentes derechos propietarios de la corporación disuelta

_____

[2] Específicamente, la Sec. 279 de la Ley General de Corporaciones de Delaware, supra, indica:

> When any corporation organized under this chapter shall be dissolved in any manner whatever, the Court of Chancery, on application of any creditor, stockholder or director of the corporation, or any other person who shows good cause therefor, at any time, may either appoint 1 or more of the directors of the corporation to be trustees, or appoint 1 or more persons to be receivers, of and for the corporation, to take charge of the corporation's property, and to collect the debts and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation, or otherwise, all such suits as may be necessary or proper for the purposes aforesaid, and to appoint an agent or agents under them, and to do all other acts which might be done by the corporation, if in being, that may be necessary for the final settlement of the unfinished business of the corporation. The powers of the trustees or receivers may be continued as long as the Court of Chancery shall think necessary for the purposes aforesaid.

una vez transcurre el plazo de tres años después de la disolución…". (Traducción nuestra). Welch, Saunders and Voss, Folk on the Delaware General Corporation Law, Vol. 3, Sec. 279.01 (2017). ("to safe guard the collection and administration of the still-existing property interests of a dissolved corporation once the three-year period after the dissolution prescribed…") Los tribunales de Delaware en varias ocasiones han tenido la oportunidad de interpretar las Secs. 278 y 279 de su Ley General de Corporaciones, supra, y han mencionado que el propósito de ambas legislaciones es permitir la liquidación de una corporación. Ambas disposiciones parten de la premisa de que luego de la disolución, la propiedad de la corporación no pasa a los accionistas, sino que sigue perteneciendo a la corporación. City Investing Co. Liquidating Trust v. Continental Cas. Co., 624 A.2d. 1191, 1195 (Del. 1993). Asimismo, en Addy v. Short, 89 A.2d 136, 140 (Del. 1952), el Tribunal Supremo de Delaware concluyó que como la Sec. 43 de la Ley General de Corporaciones de Delaware, hoy la Sec. 279, supra, "provee para el nombramiento de un síndico luego del periodo de tres años para administrar los bienes que no han sido distribuidos, esto debe significar que la corporación posee esos bienes; de lo contrario no habría nada que administrar". (traducción nuestra). ("Since Section 43 provides for appointment of a receiver after the three-year period to administer undistributed assets, it must mean that the corporation continues to hold such

assets, otherwise there would be nothing to administer.")
Sin embargo, ambas secciones se diferencian en que la Sec.
278 de la Ley General de Corporaciones de Delaware, supra,
extiende la personalidad por un plazo específico. Sin
embargo, la Sec. 279 de la Ley General de Corporaciones de
Delaware, supra, aplica, como ya mencionamos, luego de
expirado el plazo de tres años, cuando ya la corporación es
legalmente inexistente. In re Krafft-Murphy Co., Inc., 82
A.3d 696, 703-704 (Del. 2013); In re Citadel Industries,
supra, págs. 504-505; Harned v. Beacon Hill Real Estate
Co., 84 A.229 (Del. 1912). Véase también, Welch, Saunders
and Voss, supra, pág. 116.

Los tribunales de Delaware han resuelto que el único
remedio con el que cuenta una corporación para liquidar
cualquier propiedad que le pertenezca luego de que venza el
periodo dispuesto en la Sec. 278 de la Ley General de
Corporaciones de Delaware, supra, es el procedimiento
dispuesto en la Sec. 279, supra. In re Citadel Industries,
Inc., supra, pág. 507. Véase también, Balotti and
Finkelstein's, Delaware Law of Corporations and Business
Organizations, Vol. 1 , Sec. 10.16 (2017). Mediante este
procedimiento, todos los bienes de la corporación disuelta
pasan a un fideicomiso. El síndico o el administrador
judicial será el representante de la corporación y, como
tal, una vez el tribunal lo nombre, será el encargado del
fideicomiso. Welch, Saunders and Voss, supra, pág. 122. El
síndico o administrador deberá velar por los bienes que

estén en el fideicomiso y administrarlos para beneficio de los accionistas y de los acreedores. Díaz Olivo, op. cit., pág. 385. Al ejercer sus funciones deberá actuar con el juicio y la diligencia que observaría cualquier persona en su misma posición. Íd.

Hasta ahora no hemos tenido la oportunidad de interpretar el Art. 9.09 de nuestra Ley General de Corporaciones, supra. Sin embargo, el profesor de Derecho Corporativo, Carlos E. Díaz Olivo, ha indicado que el propósito del Art. 9.09 de nuestra Ley General de Corporaciones, supra, es "asegurar el cobro y la buena administración de la propiedad que aún posea la corporación luego de expirado el plazo de tres años provisto en el Artículo 9.08". Íd. Como podemos ver, ese es el mismo propósito que los tribunales de Delaware le han dado a la Sec. 279 de la Ley de General de Corporaciones de Delaware, supra. El Derecho aquí expuesto nos lleva a concluir que en caso de que una corporación haya quedado disuelta y el término dispuesto por el Art. 9.08 de la Ley General de Corporaciones, supra, haya expirado, el único remedio que existe para liquidar cualquier propiedad que aún posea la corporación, es el procedimiento dispuesto en el Art. 9.09 de nuestra Ley General de Corporaciones, supra.

## III

En este caso el periodo de liquidación de Miramar Marine culminó en 2011, de acuerdo a lo dispuesto en el Art. 9.08 de la Ley General de Corporaciones, supra.

Miramar Marine y los accionistas pasaron por alto en sus alegaciones la existencia del Art. 9.09 en la Ley General de Corporaciones, supra. Como ya mencionamos, este artículo es el encargado de regular el proceso de liquidación de la propiedad perteneciente a la corporación luego de que esta se haya disuelto. Es por esto que resulta innecesario entrar a discutir lo planteado al respecto por Miramar Marine y sus accionistas.

Asimismo, sería incorrecto concluir que los accionistas son los nudos propietarios de los bienes de la corporación luego de expirado el plazo dispuesto por el Art. 9.08 de la Ley de Corporaciones, supra, según alega Miramar Marine. Eso implicaría, como consecuencia inescapable, que las deudas y obligaciones también se les transferirían a los accionistas. Este resultado sería contrario a los preceptos de nuestro Derecho, que establece que las corporaciones tienen una personalidad jurídica distinta y separada de la de sus accionistas y las convertiría en meros DBA's (Doing Business As).

IV

La Regla 42.4 de Procedimiento Civil, 32 LPRA Ap.V, indica que "[t]oda sentencia concederá el remedio a que tenga derecho la parte a cuyo favor se dicte, aun cuando [e]sta no haya solicitado tal remedio en sus alegaciones". Asimismo, la Regla 71 de Procedimiento Civil, supra, sostiene que "[c]ualquier defecto en la denominación del pleito o en la súplica del remedio, no será óbice para que

el tribunal conceda el remedio que proceda de acuerdo con las alegaciones de la prueba. Esta regla se debe a que en reiteradas ocasiones hemos resuelto que los foros judiciales debemos hacer todo lo posible por resolver los casos que tengamos ante nosotros". Ortiz Rivera v. P.R. Tel Co., 162 DPR 715, 723 (2004). Véase, además, López v. Meléndez, 143 DPR 282, 292 (1997).

En vista de lo anterior, resolvemos conforme a derecho y proveemos el remedio adecuado en ley, aunque la parte no lo solicitó. Como consecuencia, revocamos la Sentencia emitida por el Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que la demanda de Miramar Marine, Inc. y sus accionistas se tome como una petición para activar el proceso dispuesto en el Art. 9.09 de la Ley General de Corporaciones, supra.

Se dictará sentencia de conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Miramar Marine, Inc.; Luis
A. García Gómez y otros

     Peticionarios

         v.             CC-2015-0609

Citi Walk Development
Corporation; McCloskey, Pérez
& Asociados, Inc. y otros

     Recurridos

SENTENCIA

En San Juan, Puerto Rico, a 27 de julio de 2017.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, revocamos la Sentencia emitida por el Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que la demanda de Miramar Marine, Inc. y sus accionistas se tome como una petición para activar el proceso dispuesto en el Art. 9.09 de la Ley General de Corporaciones, <u>supra</u>.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disintió con opinión escrita, a la cual se unieron la Jueza Presidenta señora Oronoz Rodríguez y el Juez Asociado señor Colón Pérez.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Miramar Marine, Inc.; Luis A. García Gómez y Otros<br><br>Peticionarios<br><br>v.<br><br>Citi Walk Development Corporation; McCloskey, Pérez & Asociados, Inc. y Otros<br><br>Recurridos | **Núm.** CC-2015-0609 |

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se unen la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez

San Juan, Puerto Rico, a 27 de julio de 2017

Este Tribunal aún no ha tenido la oportunidad de interpretar importantes disposiciones de la *Ley general de corporaciones*. Por ello, debemos aprovechar controversias como la que penden ante nuestra consideración para precisar aquellos asuntos que -aunque para una mayoría de esta Curia aparenten inmeritorios- requieren ser esclarecidos. En consideración a que la Opinión mayoritaria elude, sin mayor explicación, atender los primeros tres (3) señalamientos de error relacionados con los dictámenes recurridos; y ya que se dispone de la controversia mediante el uso innecesario y no solicitado del mecanismo contemplado en el Artículo 9.09 la *Ley*, disiento.

I

Miramar Marine, Inc. (Miramar Marine) era una corporación con fines de lucro incorporada al amparo de la *Ley general de corporaciones* de Puerto Rico. El 30 de diciembre de 2005, mediante escritura pública, Miramar Marine le vendió a Hogares, S.E. una propiedad inmueble. Como parte de la transacción de compraventa, Hogares, S.E. emitió un pagaré al portador por la cantidad de $1,625,000.00 que le fue entregado a Miramar Marine. Este pagaré fue garantizado con una primera hipoteca, a favor de Miramar Marine, constituida sobre el inmueble objeto de la compraventa. Ahora bien, el 27 de diciembre de 2007, Hogares, S.E. vendió el inmueble en cuestión a Citi Walk Development Corp. (Citi Walk). A esos efectos, Citi Walk asumió el pago de la deuda, suscrita por Hogares, S.E., a favor de Miramar Marine. Además, con tal de viabilizar la compraventa, Miramar Marine accedió a permutar a un segundo rango su hipoteca sobre el referido inmueble.[3]

---

[3] Como parte del acuerdo de subordinación de la hipoteca, Miramar Marine y Citi Walk pactaron lo siguiente: (1) se extendió la vigencia de la hipoteca a favor de Miramar Marine por un término de veinte años, contado a partir del 31 de diciembre de 2008; (2) se fijaron intereses sobre el principal de la deuda a razón de 8.25% anual hasta el 30 de junio de 2008 y, posterior a esa fecha, a razón de 8.50% anual hasta su pago total; (3) se aumentó el principal de la deuda por $75,000.00 y, a esos efectos, se emitió un pagaré al portador adicional, y (4) las compañías Urbanus Development, Inc. (Urbanus) y McCloskey, Pérez & Asociados, Inc. (McCloskey), garantizaron -por partes iguales- el pago del principal e intereses de la deuda suscrita por Citi Walk.

Posteriormente, durante el mes de abril de 2008, Miramar Marine fue disuelta. A esos efectos, comenzó un proceso de liquidación de sus activos en aras de concretar la terminación de su gestión corporativa. Como parte de ello, Miramar Marine le cursó una serie de reclamaciones extrajudiciales a Citi Walk, tras ésta incumplir con el pago de la referida compraventa. A principios del año 2010, Miramar Marine concretó un plan de pago con F&R Construction Corp. (F&R), corporación que asumió -de forma voluntaria- la deuda de Citi Walk. No obstante, F&R dejó de cumplir con el referido plan de pago a partir del mes de noviembre de 2012.

Por otro lado, Citi Walk incumplió, además, los pagos correspondientes al préstamo que se la había concedido para la compraventa del referido inmueble. En consecuencia, el 4 de abril de 2011, Oriental Bank -dueño a esa fecha del referido crédito- instó ante el Tribunal de Primera Instancia una demanda sobre cobro de dinero y ejecución de hipoteca. Así las cosas, el 20 de abril de 2012, el foro primario dictó sentencia a favor de Oriental Bank. Luego de varios trámites procesales, el referido inmueble se vendió en pública subasta y, el 18 de marzo de 2013, el tribunal de instancia ordenó la cancelación de la hipoteca en segundo rango a favor de Miramar Marine.

El 24 de septiembre de 2013, Miramar Marine y sus accionistas, Luis A. García Gómez, Marisol N. de García, Rafael Nevares Bengoechea y Marta Burgos de Nevares (en

conjunto, los peticionarios), presentaron una demanda ante el Tribunal de Primera Instancia sobre incumplimiento de contrato, cobro de dinero, daños y perjuicios, y fraude en contra de Citi Walk, Oriental Bank y otros (en conjunto, los recurridos).[4] En lo pertinente, los peticionarios plantearon que, tras la disolución de Miramar Marine, el crédito en litigio era el único activo sobrante de la corporación y solicitaron que se ordenara a los recurridos el pago de éste.[5]

El 20 de diciembre de 2013, Citi Walk; McCloskey, Pérez & Asociados, Inc. (McCloskey) y sus accionistas presentaron una moción de desestimación al amparo de la Regla 10.2 de las Reglas de Procedimiento Civil. 32 LPRA Ap. V, R. 10.2.[6] En síntesis, arguyeron que Miramar Marine

---

[4] Los demás codemandados son: McCloskey y sus accionistas, Joseph McCloskey Vázquez y su esposa Stacey Suárez Kiley, Luis Pérez Pagán y su esposa Gloria Tazón Ortiz; Urbanus, TN Development, Corp., (TN) F&R, y sus accionistas, Jaime Fullana Olivencia, Ángel Antonio Fullana Olivencia, José Miguel Fullana Olivencia y sus respectivas esposas y Sociedades Legales de Gananciales, y Oriental Bank.

[5] En particular, los peticionarios arguyeron que el principal de la deuda evidenciada por los pagarés al portador en posesión de Miramar Marine ascendía a $1,219,590.29. Asimismo, plantearon que esta cantidad no contemplaba los intereses, calculados al 8.50% anual, acumulados desde el 30 de junio de 2009. Por último, solicitaron el pago de costas y de una cantidad ascendente a $170,000.00 que habían pactado las partes para el pago de honorarios de abogado y daños y perjuicios en caso de reclamaciones entre éstas.

[6] Urbanus, TN y F&R, junto a sus accionistas, esposas y sociedades de bienes gananciales, se unieron a la moción. Por su parte, Oriental Bank presentó una moción de desestimación. Al igual que los demás recurridos, Oriental Bank fundamentó su solicitud en la falta de capacidad jurídica de Miramar Marine para presentar la demanda en cuestión. Puntualizó, además, que el pleito presentado

dejó de exponer una reclamación que justificara un remedio toda vez que, a la fecha en que se presentó la demanda, la corporación no tenía capacidad jurídica para demandar o ser demandada. De otra parte, alegaron que los accionistas de Miramar Marine no tenían una causa de acción válida ya que no instaron una demanda en cobro de su acreencia dentro del término de caducidad de tres (3) años posterior a la disolución de la corporación, conforme al Artículo 9.08 de la *Ley general de corporaciones de 1995*. 14 LPRA sec. 3008.

El Tribunal de Primera Instancia notificó, el 2 de diciembre de 2014, una *Resolución y Orden* mediante la cual denegó las mociones de desestimación presentadas por los recurridos. En síntesis, el tribunal de instancia concluyó que los peticionarios presentaron una reclamación válida que justificaba la concesión de un remedio y que Miramar Marine tenía capacidad jurídica para así hacerlo. A esos efectos, reconoció que el Artículo 9.08 de la *Ley general de corporaciones de 1995* permitía la extensión de la personalidad jurídica de la corporación disuelta, incluso transcurrido el término de tres (3) años provisto para ello, para que ésta concluyera la tramitación de aquellas

---

constituía un ataque colateral al dictamen judicial que autorizó a Oriental Bank la venta en pública subasta del inmueble en cuestión y la correspondiente eliminación de la hipoteca en segundo rango a favor de Miramar Marine.

acciones que hayan sido comenzadas durante el referido periodo de extensión.

A su vez, determinó que el término 'acción', en el contexto de este artículo, incluía la presentación de reclamaciones extrajudiciales. Así, pues, habida cuenta de que desde el año 2009 Miramar Marine realizó reclamaciones extrajudiciales directas a los recurridos, la demanda presentada constituyó una continuación o acción secundaria a la reclamación extrajudicial. Por último, concluyó que el término de extensión contemplado en el Artículo 9.08 no era de caducidad, por lo que podría quedar interrumpido indefinidamente sin intervención judicial.

Los recurridos presentaron oportunas mociones de reconsideración. No obstante, el foro primario las denegó el 29 de enero de 2015. Inconformes, éstos acudieron al Tribunal de Apelaciones mediante recursos de *certiorari*. Tras consolidar ambos recursos, el 7 de mayo de 2015, el foro apelativo intermedio notificó una *Sentencia* mediante la cual revocó la *Resolución y Orden* recurrida.

En síntesis, el foro apelativo intermedio concluyó que el término 'acción' contemplado en el Artículo 9.08 de la *Ley general de corporaciones* -al igual que en la Sección 278 de la de corporaciones del estado de Delaware, 8 Del. sec. 278- no significa "otra cosa que un pleito presentado ante un Tribunal". Considerando que Miramar Marine se disolvió durante el mes de abril de 2008, y que la reclamación extrajudicial no está incluida en el

término 'acción' del referido artículo, ésta no tenía capacidad jurídica para presentar la demanda el 25 de septiembre de 2013.

Cabe señalar, además, que los peticionarios en su oposición a la expedición del *certiorari* plantearon que, del tribunal resolver que Miramar Marine no tenía capacidad jurídica para presentar la demanda en cuestión, se debía concluir que sus accionistas tenían legitimación activa para continuar la acción de cobro de dinero. El Tribunal de Apelaciones atendió este planteamiento en una escueta nota al calce en la que se limitó a hacer referencia al caso *MBC, Inc. v. Engel*, 119 N.H. 8 (1979) y a citar la siguiente expresión del tratadista norteamericano William Fletcher, "[t]he statute extinguishes the corporate rights, remedies and claims a disolved corporation, and its shareholders, directors and officers fail to bring within the . . . wind-up period". *Apéndice*, pág. 365. El Tribunal de Apelaciones desestimó en sus méritos la demanda presentada por los peticionarios.

Oportunamente, los peticionarios solicitaron la reconsideración del dictamen del foro apelativo intermedio. No obstante, el Tribunal de Apelaciones, mediante *Resolución* notificada el 1 de julio de 2015, proveyó *no ha lugar* a la moción de reconsideración. Inconformes, el 24 de junio de 2015, los peticionarios

acudieron ante este Tribunal mediante un recurso de *certiorari*.

En síntesis, los peticionarios plantearon que el Tribunal de Apelaciones erró al determinar que Miramar Marine no poseía 'legitimación activa' para promover la presente acción.[7] Ello, pues, estiman que las reclamaciones extrajudiciales que éstos le cursaron a los recurridos extendieron la personalidad jurídica de la corporación, conforme a lo dispuesto en el Artículo 9.08 de la *Ley general de corporaciones*. Según adelantamos, la Opinión mayoritaria no aborda los tres (3) señalamientos de error que se relacionan con éste planteamiento. En la alternativa, éstos arguyeron que erró el foro apelativo intermedio tras concluir que los accionistas de Miramar Marine no podían proseguir con el presente litigio, ya que éstos eran los nudos propietarios de los activos restantes de la corporación disuelta.

Los recurridos se opusieron a la expedición del auto de *certiorari*. Éstos, en esencia, reprodujeron los planteamientos esbozados ante los foros inferiores. En lo pertinente, arguyeron que Miramar Marine carecía de

---

[7] A pesar de que los peticionarios aluden al término 'legitimación activa' en sus señalamientos de error, adelantamos que el asunto ante nuestra consideración es uno propiamente sobre capacidad jurídica. Véase *Asoc. De Res. Est. Cidra v. Future Dev.*, 152 DPR 68 (2000) ("[l]os conceptos de parte interesada o de standing no atañen a la personalidad porque se trata de relaciones jurídicas que son externas a ella y que representan el interés en el conflicto que se somete a decisión judicial".) (citas omitidas).

capacidad jurídica y legitimación activa para presentar demandas expirado el término de tres (3) años tras su disolución; que la reclamación extrajudicial no está contemplada en el término 'acción' del Artículo 9.08 de la *Ley general de corporaciones*, y que durante el término de extensión de tres (3) años se tienen que distribuir los activos restantes a los accionistas y éstos tienen que presentar aquellas causas de acción correspondientes para vindicar los derechos derivados de la corporación.

El 22 de octubre de 2015, este Tribunal notificó una *Resolución* en la que se proveyó *no ha lugar* a la petición de *certiorari*. No obstante, tras evaluar una *Primera moción de reconsideración* presentada oportunamente por los peticionarios y las correspondientes oposiciones presentadas por los recurridos, este Tribunal reconsideró su dictamen inicial y expidió el recurso de *certiorari*. Con el beneficio de las comparecencias de las partes, estamos en posición de resolver.

## II

### A

Para atender la controversia que nos atañe debemos examinar de forma particular el proceso de disolución que tienen a su disposición las entidades corporativas organizadas al amparo de la *Ley general de corporaciones*. En primer lugar, es importante puntualizar que este proceso se tiene que llevar a cabo cumpliendo estrictamente con las disposiciones correspondientes de la

*Ley*.[8] Ello, pues incumplir con los requisitos ahí dispuestos "impedirá que la corporación sea legalmente disuelta. [Por ende,] [l]a franquicia corporativa continuará vigente y la corporación, sus accionistas, directores y oficiales sujetos a todas las imposiciones que legalmente les apliquen". Véase *Dorado Handcraft, Inc. v. Registrador*, 99 DPR 21, 23 (1970). Véase, además, Manuelita Muñoz Rivera, *Ley de Corporaciones de Puerto Rico, Análisis y Comentarios* 219-220 (2015).

En términos estructurales, el proceso de disolución en nuestro ordenamiento puede dividirse en dos (2) etapas, a saber: (1) el reconocimiento por parte del Estado de la culminación de la existencia de la personalidad jurídica de la corporación, y (2) el proceso de terminar la gestión corporativa.[9] Durante la segunda etapa del proceso, la corporación dispone de diversos asuntos, a saber: "(1) cualquier litigio o procedimiento contra la corporación, sea este de naturaleza civil, criminal o administrativ[o]; (2) liquidación y cierre del negocio; (3) disposición de propiedades; (4) cumplimiento con sus obligaciones, y (5)

---

[8] Véase 14 LPRA secs. 3703-3715. Cabe señalar que, además de las referidas disposiciones, existen otras secciones de la *Ley general de corporaciones* que contienen requisitos específicos para la disolución de tipos particulares de corporaciones. Véase, por ejemplo, 14 LPRA sec. 3997 (disolución de corporaciones de responsabilidad limitada).

[9] Para una discusión del proceso de disolución en otras jurisdicciones, véase William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* 69-73, Vol. 16A (2012).

distribución y repartición de cualquier remanente a los accionistas". Carlos Díaz Olivo, *supra*, en la pág. 382.[10]

El proceso antes descrito conlleva, sin duda, considerables consecuencias jurídicas que deben ser matizadas.[11] En primer lugar, el proceso de disolución acarrea la extinción de la entidad corporativa y su capacidad jurídica de obrar. Por ello, una vez disuelta, la corporación está impedida de suscribir contratos; adquirir, poseer o transferir propiedad; demandar o ser demandada, y de ejercer cualquier otro poder conferido por

---

[10] Nótese que, al igual que la legislación corporativa de distintos estados de Estados Unidos, la *Ley general de corporaciones* no delimita la forma en que dichas gestiones debe ser realizadas. Véase James D. Cox, Thomas Lee Hanzen, F. Hodge O'Neal, *supra*, Vol. III, en la pág. 26.17 ("The statutes of most states proscribe the winding-up process only in a general way. The most important questions are the rights of creditors, whether the title to the property remains in the corporation for winding-up purposes or passes automatically to the directors as trustees or to the shareholders subject to the power of the directors to make liquidating distributions.")

[11] El profesor Carlos Díaz Olivo, sobre este proceso ha indicado que:

> Una vez se emprende el proceso de disolución la corporación inicia un proceso de transformación . . . de un negocio activo y en marcha, que desarrolla transacciones con suplidores, acreedores, clientes, empleados, el gobierno y otras personas, en pos de la consecución de los objetivos para los que se organizó, altera su curso para iniciar un proceso de ajuste con miras a su eventual desaparición del mercado. Esto no ocurre de la noche a la mañana. La corporación, entre otras cosas, tiene antes que pagar las obligaciones pendientes, cobrar sus acreencias y distribuir cualquier sobrante entre los accionistas, de conformidad a las prioridades que sus acciones les confieren. Carlos Díaz Olivo, *supra*, en las págs. 381-382.

la *Ley general de corporaciones*. Véase James D. Cox, Thomas Lee Hanzen, F. Hodge O'Neal, *Corporations* 26.21, Vol. III (1995). No obstante, mediante el Artículo 9.08 de la *Ley*, la Asamblea Legislativa permite la extensión de la personalidad jurídica de la corporación disuelta por un término de tres (3) años y le confiere a ésta ciertos poderes y facultades necesarios para terminar su gestión corporativa. 14 LPRA sec. 3708.

La médula de la controversia ante nuestra consideración requiere que examinemos con particular detenimiento el Artículo 9.08 de la *Ley general de corporaciones* con tal de interpretar su alcance. Veamos.

**B**

Comenzamos reiterando que, toda vez que la *Ley general de corporaciones* se redactó con base en la legislación corporativa del estado de Delaware, este Tribunal ha avalado, en reiteradas ocasiones, recurrir a la normativa que interpreta tal legislación a manera de guía en la interpretación de nuestra ley. Véase *Herger Pacheco v. Calidad Vida Vecinal*, 190 DPR 1007, 1017 (2014). Así, "otorgamos valor ilustrativo y persuasivo a las interpretaciones que los tribunales del estado de Delaware, al igual que otras jurisdicciones, hayan dado a las secciones correspondientes de la ley General de Corporaciones de ese estado". *Llorens v. Arribas*, 184 DPR 32, 51 (2011). Claro está, según comentaremos, esta

metodología no es una camisa de fuerza para realizar una interpretación de nuestro derecho autóctono.

Inicialmente, en el derecho común estadounidense, la disolución de una corporación equivalía a la muerte de una persona natural. William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* 10, Vol. 4A (2012).[12] A esos efectos, el Tribunal Supremo de Estados Unidos en *Oklahoma Gas Co. v. Oklahoma*, 73 U.S. 257 (1927), expresó que:

> [i]t is well settled that at common law and in the federal jurisdiction a corporation which has been dissolved is as if it did not exist, and the result of the dissolution cannot be distinguished from the death of a natural person in its effect. It follows therefore, that as the death of the natural person abates all pending litigation to which such a person is a party, dissolution of a corporation at common law abates all litigation in which the corporation is appearing either as plaintiff or defendant.

A pesar de pronunciamientos como éste, desde el siglo XIX, las cortes de Estados Unidos desarrollaron remedios en equidad para mitigar los efectos de la disolución corporativa. En *Wood v. Dummer*, 30 F.Cas. 435 (D. Maine 1824), por ejemplo, se resolvió que los activos de una corporación disuelta constituían un fideicomiso del cual los acreedores de ésta podrían cobrar su acreencia. Esta decisión es de particular importancia ya que engendró la controversial doctrina en equidad conocida como la

---

[12] Para una discusión más detallada, véase Phillip Marcus, *Suability of Dissolved Corporations-A Study in Interstate and Federal State Relationships*, 58 Harv. L. Rev. 675, 676-683 (1945).

doctrina del fideicomiso o *trust fund doctrine*.[13] Véase *Cruz v. Ramírez*, 75 DPR 947 (1954).

La utilización de la doctrina del fideicomiso por las cortes de Estados Unidos se ha sido caracterizado por su inconsistencia e imprecisión. [14] Por ello, en respuesta, los estados de Estados Unidos optaron por aprobar legislación corporativa que atendiera, de forma puntual, los retos que suponía la disolución de una corporación.[15] Este tipo de legislación se conoce como estatuto de supervivencia o *survival statute*. Véase William Meade Fletcher, *supra*, Vol. 16A, en la pág. 314.

Un estatuto de supervivencia permitirá, generalmente, la extensión de la personalidad jurídica de la corporación disuelta por un tiempo limitado para ciertos fines. En aquellas jurisdicciones donde el proceso de dar por terminada la gestión corporativa es un requisito previo para que el estado reconozca la disolución de una corporación, el estatuto de supervivencia se limita a proveer aquellos poderes y facultades necesarios para atender reclamaciones presentadas por la corporación

---

[13] Para un recuento histórico del desarrollo de la doctrina del fideicomismo, véase Edward T. Pivin, *The Integrity of Delaware's Corporate Dissolution Statute After Territory of the United States Virgin Islands v. Goldman, Sachs & Co.: Is Extended Post-Dissolution Shareholder Liability Necessary Component of Delaware's Corporate Dissolution Scheme?*, 55 St. Luis U. L.J. 1179-1182 (2011).

[14] Véase, por ejemplo, Edwin S. Hunt, *The Trust Fund Theory and Some Substitutes for It*, 12 Yale L. J. 63 (1902).

[15] Véase George D. Horstein, *Voluntary Dissolution-A New Development in Intracorporate Abuse*, 51 Yale L. J. 64 (1941).

disuelta o en contra de ésta. De otra parte, en jurisdicciones como la nuestra, donde el proceso de disolución comienza con el reconocimiento del estado de la terminación de la existencia del ente corporativo, los estatutos de supervivencia proveen poderes y facultades de mayor envergadura con tal de que la corporación disuelta pueda realizar las gestiones pertinentes para concluir su gestión corporativa. Véase William Meade Fletcher, *supra*, Vol. 16A, en las págs. 240-241.

Cabe destacar que con la aprobación de la *Ley general de corporaciones de 1956*, Ley Núm. 3 de 9 de enero de 1956, la Asamblea Legislativa optó por seguir de cerca los desarrollos de la ley corporativa del estado de Delaware. Desde entonces, el estatuto de supervivencia que rige en nuestro Derecho Corporativo es una traducción de la Sección 278 de la ley de corporaciones de dicho estado.[16] Al igual que en la *Ley general de corporaciones de 1995*, el Artículo 9.08 de la *Ley general de corporaciones de 2009* lee como sigue:

---

[16] Destacamos que nuestro Derecho Corporativo ha contemplado estatutos de supervivencia desde el año 1911 cuando se aprobó la *Ley de corporaciones privadas*, Ley Núm. 30 de 9 de marzo de 1911. Véase Artículo 27 de la *Ley de corporaciones privadas*, 1910 Leyes de Puerto Rico 107 ("Todas las corporaciones, ora cesen en virtud de la limitación fijada en las cláusulas de incorporación, ora queden anuladas por disposición legislativa, ó se disuelvan de otro modo, subsistirán como personas jurídicas con capacidad para demandar y ser demandadas y á fin de que puedan liquidar y terminar sus negocios, enajenar y traspasar sus bienes y distribuir su capital; pero no lo serán por lo que respecta á la continuación de los negocios para los cuales fueren establecidas.")

Toda corporación que se extinga por limitación propia o que por otro modo se disuelva, continuará como cuerpo corporativo por un plazo de tres (3) años a partir de la fecha de extinción o de disolución o por cualquier plazo mayor que el Tribunal de Primera Instancia (Sala Superior) en el ejercicio de su discreción disponga a los efectos de llevar adelante los pleitos entablados por la corporación y de proseguir con la defensa de los pleitos entablados contra ella, ya sean civiles, criminales o administrativos, así como a los efectos de liquidar y terminar el negocio, de cumplir con sus obligaciones y de distribuir a los accionistas los activos restantes. No podrá continuar la personalidad jurídica con el propósito de continuar los negocios para los cuales se creó dicha corporación.

Respecto a cualquier acción, pleito o procedimiento entablado o instituido por la corporación o contra ella, antes de su extinción o dentro de los tres (3) años siguientes a su extinción o disolución, la corporación continuará como entidad corporativa después del plazo de los tres (3) años y hasta que se ejecuten totalmente cualesquiera sentencias, órdenes o decretos respecto a las acciones, pleitos o procedimientos antes expresados, sin la necesidad de ninguna disposición especial a tal efecto por parte del Tribunal de Primera Instancia (Sala Superior). 14 LPRA sec. 3708.

Según podemos apreciar, el estatuto de supervivencia tiene un sinnúmero de importantes implicaciones. En primer lugar, extiende la personalidad jurídica de la corporación para ciertos fines. Ahora bien, esta extensión se puede configurar de diversas formas. Conforme al primer párrafo, el periodo de extensión será de tres (3) años y estará sujeto a ser prolongado por un término mayor, a discreción del Tribunal de Primera Instancia (Sala Superior). De otra parte, en el segundo párrafo, se provee un término de extensión automático e indefinido. Éste, en particular, se limita a la extensión de la personalidad jurídica de la

corporación disuelta para ejecutar sentencias, órdenes o decretos producto de acciones, pleitos o procedimientos, presentados antes de la disolución o durante el término de extensión de tres (3) años antes mencionado. Por último, queda de manifiesto que la corporación disuelta está vedada de continuar con su gestión de negocio.

En el contexto de este caso, debemos plantearnos las siguientes dos (2) interrogantes que no fueron contestadas por la Opinión mayoritaria. Primero, ¿las reclamaciones extrajudiciales están contempladas en el término 'cualquier acción' que contiene el segundo párrafo del Artículo 9.08? Segundo, toda vez que el Artículo 9.08 provee para un periodo de extensión de tres (3) años, ¿constituye este término uno de naturaleza prescriptivo sujeto al efecto interruptor de una reclamación extrajudicial?

i

En respuesta a la primera pregunta, si recurriéramos a una interpretación literal del término 'cualquier acción' para determinar qué comprende, obtendríamos un resultado absurdamente amplio. Por ende, es necesario contextualizar este término, en primer lugar, dentro de los confines del propio estatuto que lo contempla.

Según reseñamos, el Artículo 9.08 de la *Ley general de corporaciones* permite la continuación de la existencia de la personalidad jurídica de la corporación para llevar adelante o defenderse de 'pleitos entablados'. 14 LPRA

sec. 3708. A su vez, la misma disposición categoriza los 'pleitos entablados' como de naturaleza civil, criminal o administrativo. Por otro lado, el segundo párrafo de la disposición permite la extensión de la personalidad jurídica de la corporación disuelta para efectos de ejecutar sentencias, órdenes o decretos producto de "cualquier acción, pleito o procedimiento entablado". *Id.* Ciertamente, de lo anterior surge que la Asamblea Legislativa circunscribió la extensión de la personalidad jurídica a supuestos muy particulares contenidos en el mismo artículo.

De otra parte, cabe destacar que tanto los tribunales estatales como federales de Estados Unidos se han enfrentado a este debate en el contexto de la Sección 278 de la ley corporativa del estado de Delaware, que como sabemos es análogo al Artículo 9.08 de nuestra *Ley general de corporaciones*. En la mayoría de estas decisiones, estos tribunales se enfocaron en determinar si los términos 'action', 'suit' o 'proceeding' incluyen procedimientos de naturaleza criminal en contra de la corporación disuelta.[17] Por ejemplo, en *U.S. v. P.F. Collier & Son Corp.*, 208 F.2d 936 (7th Cir. 1953), el Tribunal de Apelaciones de Estados Unidos para el Séptimo

---

[17] Véase *U.S. v. Mobile Materials, Inc.*, 776 F.2d 1476 (10th Cir. 1985); *Mellrose Distilleries, Inc., v. U.S.*, 359 U.S. 271 (1959); *U.S. v. U.S. Vanadium Corp.*, 230 F.2d 646 (10th Cir. 1956); *U.S. v. Line Material Co.*, 202 F.2d 929 (6th Cir. 1953); *U.S. v. Safeway Stores, Inc.*, 140 F.2d 834 (1st Cir. 1944).

Circuito resolvió esta controversia en la afirmativa. El tribunal razonó que "[t]he words 'any action, suit, or proceeding' in their ordinary and generally accepted meaning and use embrace, so we think, all forms of litigation, civil, criminal, bankruptcy and admiralty."

Además, cabe señalar que el referido debate se ha contextualizado en otro tipo de acciones. Véase, por ejemplo, *Bahen & Wright, Inc. v. C.I.R.*, 176 F.2d 538 (4th Cir. 1949) (donde se interpretó que los referidos términos incluyen acciones administrativas, promovidas por agentes gubernamentales, con tal de recuperar impuestos adeudados por la corporación disuelta); *Partan v. Niemi*, 288 Mass. 111 (1934) (donde se interpretó que los referidos términos incluyen peticiones ante la Corte de Quiebras); *Craftsman Finance & Mortg. Co. v. Brown*, 64 F.Supp. 168 (D. S.D. N. Y. 1945) (donde se interpretó que los referidos términos incluyen acciones derivativas presentadas por los accionistas ante una Corte de Distrito federal). Ahora bien, los resultados de las referidas decisiones dejan de manifiesto que los términos en cuestión sólo cobijan acciones presentadas ante los tribunales de justicia o entes administrativos.

Por ende, el término 'cualquier acción', conforme lo dispone el Artículo 9.08 de la *Ley general de corporaciones*, se refiere a reclamaciones judiciales, ya sean de carácter civil, criminal o administrativo.

**ii**

En respuesta a la segunda interrogante, si estamos ante un término prescriptivo, señalamos que el tratadista norteamericano William Fletcher comenta que los estatutos de supervivencia se categorizan como una limitación a la capacidad de demandar o ser demandado de una corporación disuelta y no imponen un término prescriptivo.[18] William Meade Fletcher, *supra*, Vol. 16A, en las págs. 319-320 ("The statutory survival period has been construed as a limitation upon the capacity to sue or be sued rather than a statute of limitations"). Asimismo, recientemente el Tribunal Supremo del estado de Delaware, en *In re Krafft-Murphy, Co., Inc.*, 82 A.3d 696, 705 (2013), dispuso que:

> Nothing in section 278 operates as a statute of limitations that would bar claims or extinguish a dissolved corporation's liability to third parties. It is the case -and our courts have frequently held- that as a body corporate a dissolved corporation ceases to exist and is not amenable to suit after the expiration of section 278's three year period. From that it does not follow, however, that section 278 extinguishes the corporation's underlying liability to third parties. To the contrary, section 279 enables a dissolved corporation to (through a receiver) 'sue and be sued' after the expiration of section 278's three year period does not extinguish the dissolved corporation's underlying liability.

Nótese, además, que en la jurisprudencia de otros estados de Estados Unidos se ha llegado a la misma

---

[18] Véase, por ejemplo, *Johnson v. Helicopter & Airplane Services Corp.*, 404 F.Supp. 726 (D. Md. 1975); *Smith-Johnson Steamship Corp. v. United States*, 231 F.Supp. 184 (D. Del. 1964).

conclusión.[19] Como fundamento para ello se ha resaltado la importancia de distinguir entre los propósitos de ambas figuras, a saber, "[t]he distinction is that a statute of limitations affects the time that a stale claim may be brought while a survival statute gives life for a limited time to a right or claim that would have been destroyed entirely but for the statute". *Davis v. St. Paul Fire & Marine Ins. Co.*, 727 F.Supp. 549, 551 (D. S.D. 1989). Véase, además, *Van Pelt v. Greathouse*, 364 N.W.2d 14, 15 (1985).

Cuando se habla de '*statutes of limitations*', se refiere a aquella disposición que fija términos de prescripción. Véase Guillermo Cabanellas, Eleanor Hoague, *Diccionario Jurídico Español/Inglés Butterworths* 586 (1991). Por lo tanto, la prescripción extintiva y el *statute of limitations* del derecho común son figuras análogas que sirven el mismo propósito.

En consideración a lo anterior, sería irreconciliable categorizar el término de extensión provisto por el estatuto de supervivencia de la *Ley general de corporaciones* como uno prescriptivo. A esos efectos, debemos descartar la aplicación del efecto

---

[19] Véase *Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co.*, 68 F.3d 1016, 1020 (7th Cir. 1995) (interpretando legislación corporativa del estado de Illinois); *Huston v. Fulgham Industries, Inc.*, 869 F.2d 1457, 1460 (11th Cir. 1989) (interpetando legislación corporativa del estado de Alabama); *Litts v. Refrigerated Transport Co.*, 375 F.Supp. 675, 677 (D. M.D. Pa. 1973) (interpetando legislación corporativa del estado de Georgia).

interruptor al que este término está sujeto. Véase 31 LPRA sec. 5303. Véase, además, *Sánchez v. Aut. de los Puertos*, 153 DPR 559, 567-567 (2001); *García Aponte et al. v. E.L.A. et al.*, 135 DPR 137 (1994); *Zambrana Maldonado v. E.L.A.*, 129 DPR 740 (1992).

### c

En el contexto del proceso de terminación de la gestión corporativa, al amparo del Artículo 9.08 de la *Ley general de corporaciones*, la corporación disuelta tiene la facultad de distribuir sus activos.[20] Así,

---

[20] Los poderes y facultades provistos a las corporaciones disueltas, por virtud de los estatutos de supervivencia, constituyen un mero marco de referencia en cuanto a los actos a ser realizados para terminar la gestión corporativa. Véase William Meade Fletcher, *supra*, Vol. 16A, en la pág. 353. Ello, pues, estos estatutos no suelen prescribir requisitos, de orden u forma, para llevar a cabo este proceso. Ahora bien, surge del propio lenguaje de la *Ley general de corporaciones*, la jurisprudencia y los tratadistas una sugerencia implícita referente a cuándo deben distribuirse los activos corporativos y los actos que deben preceder la distribución. Por ejemplo, el lenguaje de los Artículos 9.07, 9.08, 9.09, 9.10, 9.14 de la *Ley* sugiere que la distribución de activos se realizará luego de subsanar las obligaciones de la corporación. A esos efectos, el Prof. Carlos Díaz Olivo insinúa el mismo orden cuando comenta que la corporación disuelta durante su proceso de liquidación o terminación "tiene antes que pagar las obligaciones pendientes, cobrar sus acreencias y distribuir cualquier sobrante entre los accionistas, de conformidad a las prioridades que sus acciones les confieren". Carlos Díaz Olivo, *supra*, en las págs. 381-382. Por último, William Fletcher puntualiza que "[a]fter dissolution, the property of the corporation passes to the shareholders, subject to the payment of corporate debts. Any distribution to shareholders made before satisfaction of the corporation's debts is illegal, and corporate creditors can bring claims against the shareholders possessing the corporate assets." William Meade Fletcher, *supra*, Vol. 16A, en las págs. 483-484.

durante el término de extensión de la personalidad jurídica, ésta retiene la facultad de poseer y de disponer de su propiedad.

Cabe señalar, además, que la titularidad de la propiedad de la corporación disuelta no se ve afectada durante el referido periodo de extensión. A esos efectos, el Tribunal Supremo del estado de Delaware expresó que "as concerns the property it had at the time of dissolution, it's title and possessions are unimpaired. Whatever rights it had, of whatever nature, are preserved, in full vigor during the three year period. Any other conclusion would contravene the plain language of the statute." *Addy v. Short*, 47 Del. 157, 163 (1952).[21] Ahora bien, culminado el término de extensión de la personalidad jurídica de la corporación disuelta, su capacidad jurídica de obrar queda extinguida por completa. Es en este momento, que la corporación extinta está imposibilitada de poseer o disponer de su propiedad.

---

Véase, además, *Jenot v. White Mountain Acceptance Corp.*, 124 N.H. 701, 706 (1984) ("This court has long recognized the rights of former shareholders of a dissolved corporation to succeed, in their individual capacities, to assets owned but her corporation prior to dissolution . . . subject to the payment of corporate debts.").

[21] Véase, además, James D. Cox, Thomas Lee Hanzen, F. Hodge O'Neal, *supra*, en la pág. 26.21 ("Debts do to or buy the corporation are not extinguished. Even in the absence of a statute, a court of equity can enforce collection of debts due to a corporation for the benefit of creditors and shareholders and will satisfy debts due from the corporation out of its assets. The property of the corporation  belongs to the shareholders, subject to the corporate debts and the powers of the liquidators".).

En la discusión del Derecho que se aborda en la Opinión mayoritaria, se dispone que "los efectos de la disolución de una corporación son distintos a los de la muerte de una persona natural". *Opinión mayoritaria*, en la pág. 9. Por ende, se concluye que "sería erróneo ver a los accionistas de una corporación disuelta como los herederos de los activos y pasivos de la entidad". *Id*. en la pág. 10.

En consideración a lo anterior, la mayoría analiza el Artículo 9.08 ya discutido, al igual que el Artículo 9.09 de la *Ley general de corporaciones*. Éste último, según bien se señala en la Opinión mayoritaria, permite que en cualquier momento -ciertas personas con interés- soliciten el nombramiento de un síndico o administrador judicial para que

> cobren los créditos y recobren los bienes de la corporación con poder de demandar y defender, a nombre de la corporación, para entablar todos los litigios que sean necesarios para los propósitos antes expuestos, y para nombrar agente o agentes bajo sus órdenes y para ejecutar todos los actos que la corporación realizaría, si existiera y que sean necesarios para la liquidación final de los asuntos corporativos pendientes. 14 LPRA sec. 3709.

Posteriormente, una mayoría de este Tribunal hace referencia a varias determinaciones del Tribunal Supremo del estado de Delaware en las que se resuelve, al amparo de la ley general de corporaciones de ese estado, que la propiedad del ente corporativo no pasa a los accionistas, pues ésta sigue perteneciendo a la corporación. Conforme

a este razonamiento se justifica la funcionalidad del mecanismo dispuesto en la Sección 279 de la ley de Delaware -equivalente al Artículo 9.09 de nuestra *Ley*-. No obstante, con ello discrepo.

En primer lugar, considero que -como bien identificó la Opinión mayoritaria- "las interpretaciones que hagan los tribunales de Delaware sobre su Ley General de Corporaciones *tienen valor ilustrativo y persuasivo* en esta jurisdicción". *Opinión mayoritaria*, en la pág. 8 (énfasis suplido). Ciertamente, en el Derecho Corporativo existe una verdadera analogía con la legislación de ese estado para justificar un análisis de derecho comparado. Véase *Vilanova v. Vilanova*, 184 DPR 824, 885-886 (2012) (Op. Disidente, Fiol Matta, Hernández Denton, Rodríguez Rodríguez). Ahora bien, ya que debemos realizar esta tarea interpretativa en consideración a las realidades específicas de nuestro contexto, no estamos obligados a adoptar las interpretaciones o la jurisprudencia que utilicemos para efectuar este análisis. Véase *Pueblo v. Rivera Cintrón*, 185 DPR 484, 490 (2012); *Peña Clos v. Cartagena Ortiz*, 114 DPR 576, 588 (1983) (Cuando una de nuestras instituciones derive de determinada tradición jurídica, los precedentes de ésta tendrán valor persuasivo en esta jurisdicción, sin olvido de desarrollos valiosos en otros sistemas, aunque sujeto siempre a las realidades específicas de nuestro medio).

Según señalamos anteriormente, la ausencia de personalidad jurídica anula la capacidad para poseer. Por tanto, no me parece suficiente aludir al carácter de 'ficción jurídica' del ente corporativo para justificar el que, una vez extinta, ésta posea propiedad para posibilitar el mecanismo de liquidación opcional contemplado en el Artículo 9.09 de la *Ley* .

Veremos que, si estudiamos este dilema un poco más allá de los confines de Delaware -incluso dentro de los propios márgenes de los tratados dedicados al Derecho Corporativo- podremos apreciar que no hay consenso real sobre qué ocurre con los activos de la corporación una vez ésta se extingue. Por tanto, considero necesario repasar una figura que estimo central para plantear una solución alterna a esta controversia; a saber, el accionista.

Anteriormente, hemos definido la figura del accionista como un propietario de una corporación con fines de lucro. *Santiago v. Rodríguez*, 181 DPR 204, 215 (2011). Éste, como titular de las acciones de la corporación, "posee una parte alícuota de su capital, un derecho general a participar de sus ganancias y la distribución de sus activos en caso de liquidación". *Id*. Para todos los efectos, los accionistas son "the ultimate equitable owners of [the corporation's] assets." William Meade Fletcher, *supra*, Vol. 12B, en las págs. 72-73.

Así, pues, tras la disolución de la entidad corporativa, el interés propietario de los accionistas subsiste inalterado. Véase William Meade Fletcher, *supra*, Vol. 16A, en la pág. 276 ("[a]lthough the dissolution of a corporation may have an impact on the personal rights of shareholders, it does not terminate their property interests in the corporation."). Por ende, resulta evidente que, luego del vencimiento del periodo de extensión de la personalidad jurídica de la corporación disuelta, los activos sobrantes de ésta son transferidos a mano de los accionistas, en cuanto éstos son dueños de la misma. Véase, por ejemplo, *Jenot v. White Mountain Acceptance Corp.*, 124 N.H. 701 (1984) (interpretando legislación corporativa del estado de New Hampshire).[22]

Según reseñamos en los acápites precedentes, uno de los efectos del estatuto de supervivencia es proveer un límite de tiempo para presentar causas de acción, a favor o en contra de la corporación disuelta, que hayan surgido previo a la disolución o durante el referido término de

---

[22] Cabe reconocer que la Opinión mayoritaria tiene una preocupación legítima en cuanto a esta propuesta; a saber, si se afectará la dicotomía entre la personalidad jurídica de la corporación y aquella del accionista individual. Ello, principalmente, respecto a la transferencia de los pasivos y obligaciones de la corporación, una vez ésta se extinga, a los accionistas. Ahora bien, surge de las alegaciones de este caso que no existen obligaciones o pasivos correspondientes a la extinta Miramar Marine. Por tanto, no estamos llamados a abordar este asunto. Ahora bien, confío que, de suscitarse una controversia como ésta, podríamos armonizar lo aquí propuesto con este principio para así asegurar debidamente los intereses de los accionistas.

extensión. Cabe señalar que, las causas de acción que tuviese la corporación disuelta a su haber, pueden ser considerados como activos transferibles a los accionistas. Véase, por ejemplo, *Huston v. Fulgham Industries, Inc.*, 869 F.2d 1457 (11th Cir. 1989). En consideración a ello, una vez se extinga la corporación disuelta, es necesario identificar a favor de quién se presenta las causas de acción.[23]

Ahora bien, Fletcher nos indica que los accionistas no pueden hacer valer los derechos extintos de una corporación disuelta. Esto, pues una accionista no tiene más derechos de los que tiene la corporación. Véase William Meade Fletcher, *supra*, Vol. 16A, en la pág. 326. Ello no obstante, y en lo que nos atañe, Fletcher

_____

[23] La jurisprudencia que aborda este tema a nivel estatal y federal se contextualiza, principalmente, en la ley de corporaciones del estado de Illinois. Aunque esta legislación contiene un estatuto de supervivencia notablemente distinto al nuestro, consideramos pertinente reseñar este asunto brevemente. En particular, los tribunales han determinado que las causas de acción trasferidas a los accionistas, tras el proceso de disolución, tienen que ser vindicadas durante el término de extensión de la personalidad jurídica de la corporación disuelta. Aunque, inicialmente, la regla se aplicó con sumo rigor, al presente se ha flexibilizado y contempla dos excepciones generales; a saber: (1) aquellas causas de acción que son presentadas por los accionistas a título personal por un daño que se le ha causado y (2) "those involving ascertainable or previously asserted claims that have the caracter of a tangible property asset and which have devolved by law or have been assigned to the shareholders." *Halliwell Associates, Inc. v. C.E. Maguire Services, Inc.*, 586 A.2d 530 (1991). Véase, *Shariff v. International Development Group Co. Ltd.*, 399 F.3d 857 (2005). Véase, además, Jacqueline M. Belcastro, *Post-Dissolution Rights of Corporations: What Survives the Survival Statute*, 89 Ill. B.J. 120 (2001).

distingue la situación anterior de cuando el accionista busca vindicar en su capacidad personal sus derechos. Específicamente señala que:

> the rights of former shareholders to seek recovery **in their own individual capacities, seeking nothing for and on behalf of the corporation. Corporate continuance statutes do not supplant the equitable rule that shareholders succeed to the assets of a dissolved corporation and therefore they are entitled to maintain an action on that basis despite expiration of the corporation's wind-up period.** *Id.* (énfasis nuestro).

## III

Procedemos entonces a aplicar la normativa jurídica antes reseñada a los hechos en el caso de autos.[24]

Los peticionarios intentan persuadirnos de que la frase 'cualquier acción', dispuesta en el Artículo 9.08 de la *Ley general de corporaciones*, incluye la figura de la reclamación extrajudicial.[25] De acceder a tal

---

[24] En consideración a que esta controversia se trabó con la presentación de una moción de desestimación al amparo de la Regla 10.2 de las Reglas Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, corresponde que tomemos como ciertos "todos los hechos bien alegados en la demanda, que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas". *Colón v. Lotería*, 167 DPR 625, 649 (2006). Véase, también, *Torres Torres v. Torres Serrano*, 179 DPR 481, 501 (2010). Asimismo, debemos interpretar estos hechos conjuntamente, liberalmente y de la manera más favorable a la parte demandante. Véase *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497 (1994); *Alberty Marrero v. Rodríguez Emma y otros*, 149 DPR 655 (1999).

[25] En lo pertinente, cabe recordar que la reclamación extrajudicial constituye una manifestación inequívoca de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo. Véase *De Jesús v. Chardón*, 116 DPR 238 (1985); *Feliciano v. A.A.A.*, 93 DPR 655 (1966).

propuesta, la presentación de una reclamación extrajudicial tendría el efecto de activar el término de extensión de la personalidad jurídica de una corporación disuelta, conforme lo dispone el segundo párrafo del referido artículo, "hasta que se ejecuten totalmente cualesquiera sentencia, órdenes o decretos". 14 LPRA sec. 3708. Apoyados en esta interpretación, los peticionarios razonan que al haber presentado una reclamación extrajudicial en contra de algunos de los recurridos, durante los tres (3) años siguientes a la disolución de Miramar Marine en el año 2008, tenían la facultad de "continuar su litigación al convertirla en una reclamación judicial y presentar la correspondiente demanda" en el año 2013.

Tras un análisis integral del lenguaje del Artículo 9.08 de la *Ley general de corporaciones* y aquella jurisprudencia pertinente, concluimos que no fue la intención de la Asamblea Legislativa considerar la reclamación extrajudicial como una 'acción', 'pleito' o 'procedimiento'. A esos efectos, y como habíamos adelantado, al igual que las cortes estatales y federales de Estados Unidos, concluimos que estos términos, en el contexto de los estatutos de supervivencia, se refieren a

---

"Este tipo de reclamación sirve varios propósitos fundamentales, siendo los principales: interrumpir el transcurso del término prescriptivo de las acciones; fomentar las transacciones extrajudiciales, y notificar, a grandes rasgos, la naturaleza de la reclamación". *Sánchez*, 153 DPR en la pág. 568.

reclamaciones iniciadas ante los tribunales de justicia, cortes de quiebras o agencias administrativas. Lo contrario supondría claudicar el estatuto de supervivencia y permitir que las corporaciones subsistan por tiempo indefinido –pese a haber sido disueltas- siempre que se reclame extrajudicialmente cualquier derecho o acreencia.

Es necesario recalcar que los estatutos de supervivencia, aunque de carácter remedial, se diseñaron con el propósito de proveer seguridad al proceso de disolución y terminación de la gestión corporativa de una corporación disuelta. Véase James D. Cox, Thomas Lee Hanzen, F. Hodge O'Neal, *supra*, en la pág. 26.29. A su vez, se aprobaron para delimitar el periodo de tiempo en el que la corporación, sus accionistas, acreedores y terceros, podrían ejercer sus derechos y responder por sus obligaciones.

Permitir que la reclamación extrajudicial presentada por los peticionarios active los efectos del Artículo 9.08 de la *Ley general de corporaciones*, sin ésta siquiera tener el potencial de producir, de suyo, una sentencia orden o decreto, sentaría un precedente que atentaría contra la estabilidad que propicia el estatuto de supervivencia.

Por otro lado, los peticionarios proponen que el referido estatuto de supervivencia debe ser categorizado como uno de prescripción con todos los atributos que esta

figura jurídica ostenta. Así, razonan que la extensión de la personalidad jurídica de una corporación disuelta estaría sujeta a interrupción mediante actos no contemplados en la *Ley general de corporaciones*. No les asiste la razón.

Conforme discutimos anteriormente, los tribunales de Estados Unidos que han abordado precisamente la misma controversia que aquí atendemos -incluyendo los del estado de Delaware de donde proviene el Artículo 9.08 de la *Ley general de corporaciones*- han concluido uniformemente que el estatuto de supervivencia no es un estatuto que fije un término prescriptivo. La parte peticionaria no ha adelantado fundamento alguno para abandonar el razonamiento de estos foros judiciales.

De otra parte, sin duda alguna, existe una distinción fundamental entre los fines que persiguen los estatutos de supervivencia y la figura de la prescripción. Consideramos que extender al esquema legislativo en cuestión los efectos jurídicos de la prescripción constituiría un atentado a la prerrogativa de la Asamblea Legislativa en cuanto a la regulación de la existencia misma del ente corporativo.

En consideración a lo anterior, concluimos que la reclamación extrajudicial presentada por Miramar Marine no tuvo el efecto de activar el periodo de extensión contemplado en el segundo párrafo del Artículo 9.08 de la *Ley general de corporaciones*. Así, pues, transcurrido el

término de tres (3) años, contado a partir de la disolución de ésta, Miramar Marine cesó de existir y no tenía capacidad jurídica para presentar la demanda en cuestión.

Ahora bien, según comentamos, el interés propietario de los accionistas se mantiene inalterado luego de la extinción de la personalidad jurídica de la corporación disuelta. Así, éstos advienen dueños de los activos restantes de ésta. Por tanto, conforme a los hechos bien alegados en la demanda, los accionistas de la extinta Miramar Marine se convirtieron en dueños de su único activo restante, a saber, el crédito en litigio.

Cabe destacar que los accionistas de Miramar Marine hicieron constar en la demanda enmendada que "promueven la presente demanda por sí y como parte del proceso de liquidación de los asuntos corporativos". *Apéndice*, pág. 333. Ciertamente los accionistas no pueden vindicar derechos de la extinta Miramar Marine, pero, en éste caso, éstos bien pueden continuar el presente litigio para vindicar un derecho personal que alegan tener, es decir para cobrar su acreencia.

No obstante, la Opinión mayoritaria dispone que en caso de que una corporación se disuelva, y transcurra el periodo de extensión contemplado en el Artículo 9.08 de la *Ley general de corporaciones*, "el único remedio que existe para liquidar cualquier propiedad que aún posea la corporación, es el procedimiento dispuesto en el Art.

9.09 de nuestra Ley General de Corporaciones, <u>supra</u>". *Opinión mayoritaria*, en la pág. 16. Según comenté, discrepo conceptualmente de este curso de acción. Asimismo, me parece inadecuado el lenguaje utilizado para articular la determinación, pues aparentaría convertir un procedimiento -evidentemente- opcional en uno obligatorio. ¿Quedará trastocada la naturaleza de los procedimientos de liquidación corporativa tras este dictamen? Veremos.

Por último, considero que este Tribunal se extralimitó al ordenar, *motu proprio*, que la demanda se convierta en una petición para activar el proceso dispuesto en el Artículo 9.09 de la *Ley general de corporaciones*. En primer lugar, es preciso destacar que la parte peticionaria no realiza una solicitud para comenzar el procedimiento en cuestión; ni siquiera hace mención alguna del Artículo 9.09. Si bien es cierto que en uno de los alegatos presentado por las partes recurridas se hace referencia a este procedimiento, éstos no solicitaron que se activara el mismo. Al contrario, en consideración a que entendían que procedía, solicitaban la desestimación de la causa de acción instada. En segundo lugar, soy del criterio que el texto del Artículo 9.09 no contempla que el proceso en cuestión sea iniciado, *motu proprio*, por los tribunales. Más bien, el lenguaje es meridianamente claro al disponer que "a petición de" los accionistas, acreedores u otra parte

interesada de la corporación disuelta -según los criterios que dispone la propia *Ley*-, el tribunal podrá nombrar un síndico u administrador judicial. Por tanto, insistimos, no le corresponde a este Tribunal ordenar el inicio del procedimiento en cuestión.

**IV**

Por todo lo anterior disiento del curso decisorio de la mayoría cuyo resultado práctico será burocratizar innecesariamente el proceso de disolución de una corporación.


Anabelle Rodríguez Rodríguez
Juez Asociada