Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| CARMEN SOCORRO SIMÓN VALLE<br><br>Apelante<br><br>v.<br><br>MUNICIPIO DE DORADO, TRIPLE-S PROPIEDAD, INC., INTER ISLAND AMUSEMENT, INC., JENNIFER M. QUINTERO GARRIGA, FULANO DE TAL, SOCIEDAD LEGAL DE GANANCIALES, DWIGHT PASTRANA BETANCOURT, FULANA DE TAL, SOCIEDAD LEGAL DE GANANCIALES, COMPAÑÍAS DE SEGUROS X, Y, Z, W, JOHN DOE<br><br>Apelados | KLAN202400030[1] | *Certiorari*, acogido como apelación, procedente del Tribunal de Primera Instancia, Sala de Superior de Bayamón<br><br>Caso Núm.<br>BY2023CV03929<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Pagán Ocasio, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de febrero de 2024.

**I.**

El 26 de diciembre de 2023, la señora Carmen Socorro Simón Valle (señora Simón Valle o apelante) presentó ante nos un recurso intitulado "Petición de Certiorari", mediante el cual solicita que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, (TPI) el 8 de noviembre de 2023, notificada y archivada en autos al siguiente día.[2] Mediante este dictamen, se desestimó una *Demanda* en reclamo de daños y

---

[1] Anteriormente KLCE202301455. El 10 de enero de 2024, emitimos una *Resolución* por la cual, en parte, ordenamos a la Secretaría de este foro asignar el alfanumérico correspondiente a una apelación toda vez que se recurre de una *Sentencia Parcial*.
[2] Apéndice de la Apelación, Anejo 6, págs. 34-36.

perjuicios promovida por la señora Simón Valle en contra de la señora Jennifer M. Quintero Garriga (señora Quintero Garriga o apelada) y su esposo, el señor Dwight Pastrana Betancourt (señor Pastrana Betancourt o apelado) (en conjunto, los apelados).[3]

El 10 de enero de 2024, emitimos una *Resolución* por la cual le concedimos a la parte apelada hasta el 25 de enero de 2024 para presentar su alegato en oposición, y ordenamos a la Secretaría de este foro asignar el alfanumérico correspondiente a una apelación toda vez que se recurre de una *Sentencia Parcial*.

El 23 de enero de 2024, la señora Quintero Garriga y el señor Pastrana Betancourt presentaron un *Alegato en Oposición,* mediante el cual arguyeron que la apelante no discutió en su escrito cómo las expresiones públicas de la señora Pastrana Garriga incluyen una admisión expresa de responsabilidad personal y excluyen el deber de cumplir con el mandato del Artículo 12.04 de la *Ley General de Corporaciones,* Ley Núm. 164 del 16 de diciembre de 2009 (Ley Núm. 164-2009), 14 LPRA sec. 3784. También sostuvieron que la señora Simón Valle ignora la continuidad de la personalidad jurídica de una corporación, la cual se extiende por tres (3) años luego de la disolución, a tenor con el Artículo 9.08 de la Ley Núm. 164-2009, *supra,* sec. 3708, y según las alegaciones de los apelados, el que Inter-Island Amusement, Inc. (Inter-Island) no haya contestado la *Demanda* se debe a que la apelante no la emplazó dentro de los 120 días, a tenor con la Regla 4.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 4.3. Por lo que solicitó que se confirme *Sentencia* dictada por el TPI.

Posteriormente, el 29 de enero de 2024, la apelante presentó una *Moción para Alertar al Tribunal sobre Diligenciamientos de Emplazamiento de las Partes Demandadas* a la cual anejó los

---

[3] Íd., Anejo 1, págs. 1-7.

emplazamientos de los co-demandados incluyendo el de Inter-Island, quien fue emplazada el 18 de agosto de 2023. En otras palabras, contrario a lo que alegan la señora Quintero Garriga y el señor Pastrana Betancourt; esto es, que la apelante no emplazó a Inter-Island dentro de los 120 días dispuestos por la Regla 4.3 de Procedimiento Civil, *supra*, R. 4.3, esta entidad sí fue emplazada dentro de dicho término y por medio del señor Pastrana Betancourt como dueño de esta.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso, y en adelante, pormenorizamos los hechos procesales atinentes a la *Apelación*.

**II.**

El caso de marras tiene su génesis el 14 de julio de 2023 cuando la señora Simón Valle presentó la *Demanda* en contra del Municipio Autónomo de Dorado (Municipio de Dorado), Triple-S Propiedad, Inc. (Triple-S), Inter-Island, la señora Quintero Garriga, el señor Pastrana Betancourt y las Compañías Aseguradoras X, Y, Z, W de *Navitown* y/o cualquier otra parte responsable (en conjunto, co-demandados). En la misma se alega que el 27 de diciembre de 2022 cuando la señora Simón Valle visitó el Gran Parque Agroturístico Ecológico Recreativo El Dorado ("Gran Parque") en el Municipio de Dorado donde se llevó a cabo la octava (8va) Edición de *Navitown*. La señora Simón Valle, junto a su nieta de nueve (9) años, se montó en una machina llamada silla voladora. Al parecer, mientras la machina se movía, la silla voladora colapsó, y tanto la señora Simón Valle como su nieta y los demás pasajeros se cayeron. Alega la apelante que, luego del supuesto incidente, la señora Pastrana Garriga explicó a la prensa que la machina sufrió un desperfecto mecánico y consecuentemente "le ocasionó daños físicos y emocionales a todos los pasajeros que se encontraban montados

cuando ocurrió el accidente".[4] Según surge de la *Demanda*, la señora Simón Valle cayó sobre su lado izquierdo, se golpeó la cabeza, los brazos y la espalda, y perdió la conciencia de forma momentánea. También alegó haber sufrido otras consecuencias por los supuestos actos y/u omisiones negligentes y/o culposas, la falta de cuidado, y la previsibilidad de los co-demandados, tales como angustias mentales, y salud emocional y calidad de vida afectadas. Posteriormente, según surge de las alegaciones contenidas en la *Demanda*, la señora Simón Valle fue llevada, mediante ambulancia, al *Doctor's Center Hospital Orlando Health* en Dorado donde le realizaron Rayos-X, CT-Scan, y la diagnosticaron con *"blunt head trauma, left shoulder tendinitis, and left elbow tendinitis."*[5] Al próximo día, 28 de diciembre de 2022, fue dada de alta. Sin embargo, según alega la apelante, como consecuencia de los daños sufridos, visitó lugares para ser atendida médicamente.

Conforme a las alegaciones de la *Demanda, Navitown*, Inter-Island, el Gran Parque y el Municipio de Dorado eran los custodios de la feria, y los apelados eran los "administradores, productores, coordinadores y encargados de la 8va Edición de Navitown".[6] La apelante también arguyó que los co-demandados son responsables del mantenimiento de las machinas, y la señora Quintero Garriga y el señor Pastrana Betancourt son oficiales y accionistas de Inter-Island. Para el 6 de febrero de 2023, según las alegaciones de la apelante, realizó una reclamación extrajudicial en contra del Municipio de Dorado, por correo certificado y acuse de recibo, por la cual, entre otros asuntos, "informó sobre los daños sufridos a consecuencia de los actos y omisiones negligentes del Municipio de Dorado, Gran Parque Agroturístico, Navitown, e Inter-Island

---

[4] Apéndice de la Apelación, Anejo 1, pág. 3.
[5] Íd., pág. 4.
[6] Íd., pág. 5.

Amusement, Inc.".[7] Además, arguye la apelante que, para la fecha del alegado incidente, el Municipio de Dorado poseía una póliza de seguro vigente con Triple-S. En fin, la señora Simón Valle valoró sus daños físicos en una suma no menor de $150,000.00, y sus angustias mentales en una cantidad no menor de $200,000.00.

El 21 de octubre de 2023, la señora Quintero Garriga y el señor Pastrana Betancourt presentaron una *Moción de Desestimación Parcial de Demanda,* a tenor con la Regla 10.2 (5) de Procedimiento Civil, *supra,* R. 10.2.[8] En esta arguyeron que la *Demanda* no contiene reclamación que justifique la concesión de un remedio; **de existir una obligación es de Inter-Island y no de los apelados como oficiales de esta entidad**; la señora Simón Valle incumplió con el Artículo 12.04 (B) de la Ley Núm. 164-2009, *supra,* sec. 3784, y la apelante no alegó los elementos requeridos para la aplicación de una de las excepciones de este artículo.

Mediante una *Orden* del 22 de octubre de 2023, notificada el 23 de octubre de 2023, el TPI ordenó a la apelante a oponerse o reaccionar en o antes del 10 de noviembre de 2023, a tenor con la Regla 8.4 de Procedimiento Civil, *supra,* R. 8.4.[9]

El 30 de octubre de 2023, la señora Simón Valle presentó una *Oposición a Moción de Desestimación,*[10] mediante la cual arguyó que los hechos alegados en la *Demanda* demuestran su derecho a un remedio. Lo anterior ya que, según alega la señora Simón Valle, los co-demandados son responsables del mantenimiento de las machinas, los daños supuestamente sufridos por ella eran previsibles, y los apelados "eran los administradores, productores, coordinadores y encargados de la feria donde ocurrió el accidente".[11]

---

[7] Íd., pág. 6.
[8] Íd., Anejo 2, págs. 8-12.
[9] Íd., Anejo 3, pág. 14.
[10] Íd., Anejo 4, págs. 15-17.
[11] Íd., pág. 16.

Ese mismo día, el Municipio de Dorado y Triple-S, presentaron una *Contestación a Demanda*.[12] Mediante esta alegaron afirmativamente que Triple-S expidió la póliza número 30-CP-81092164-5 a favor del Municipio de Dorado con efectividad desde el 30 de junio de 2022 al 30 de junio de 2023. Sin embargo, negaron imputación de negligencia o responsabilidad porque, según los co-demandados, el Municipio de Dorado no tenía el control del área donde ocurrió el incidente objeto de la *Demanda*. En cambio, **arguyeron que la entidad ILA, LLC** "tenía a su cargo la custodia y control del Gran Parque Agroturístico, Ecológico y Recreativo 'El Dorado'", estaba encargada de "contratar el equipo, personal, recursos técnicos y propiedad mueble para la celebración del evento NAVITOWN", y de llevar a cabo, organizar y producir esta actividad.[13] Según indicado en la *Contestación a Demanda*, el Municipio de Dorado suscribió un contrato con ILA, LLC para el "arrendamiento del Parque Agroturístico, Ecológico y Recreativo 'El Dorado' para la celebración del evento NAVITTOWN del 15 de diciembre de 2022 al 8 de enero de 2023".[14] En fin, el Municipio de Dorado y Triple-S sostuvieron que de probarse el incidente, ILA, LLC es quien podría responder frente a la señora Simón Valle.

El 9 de noviembre de 2023, el TPI notificó una *Sentencia Parcial* emitida el 8 de noviembre de 2023 desestimando sin perjuicio la *Demanda* en contra de los apelados, al amparo de la Regla 10.2(5) de Procedimiento Civil. Específicamente resolvió que:

> [E]ntiende que los codemandados Quintero-Pastrana no son solidariamente responsables con los demás demandados. Además, el Tribunal concurre con los codemandados Quintero-Pastrana en el argumento en derecho de que la parte demandante "no ha cumplido con el mandato del Artículo 12.04 de la Ley General de Corporaciones de Puerto Rico. La parte demandante tampoco ha alegado los elementos

---

[12] Íd., Anejo 5, págs. 18-33.
[13] Íd., págs. 19-20.
[14] Íd., pág. 29 (Defensas Afirmativas).

necesarios para que aplique alguna de las excepciones al mencionado artículo".[15]

El 20 de noviembre de 2023 la señora Simón Valle presentó una *Moción de Reconsideración*.[16] En síntesis, arguyó que erró el TPI al desestimar el pleito de marras en contra de los apelados "sin ninguna evidencia que liberara a los codemandados de responsabilidad y que refutara la presunción que establece la alegación número 25 de la demanda", y descansando "únicamente en la alegación número 26 de la demanda que alega que los codemandados son oficiales y accionistas de Inter-Island Amusement, Inc. . . .".[17] La señora Simón Valle también argumentó que no viene obligada a cumplir con el Artículo 12.04 de la Ley Núm. 164-2009, *supra*, ya que, las alegaciones de la *Demanda* versan sobre los apelados en su carácter personal y no como oficiales o accionistas de la empresa. Además, según las alegaciones de la *Moción de Reconsideración*, Inter-Island fue disuelta antes del accidente; esto es, el 30 de marzo de 2022, cuando el alegado incidente ocurrió el 27 de diciembre de 2022. Por lo tanto, al momento de ocurrir el supuesto accidente "la corporación no podía llevar a cabo negocios jurídicos como los alegado[s] en la demanda y moción de desestimación".[18] Específicamente, la apelante arguyó que, "[c]ualquier contrato que los codemandados hayan firmado en representación de Inter-Island Amusement, Inc., es nulo e inexistente".[19] La señora Simón Valle también sostuvo que Inter-Island Amusement, Inc. no ha contestado la *Demanda*, por lo cual, al desestimarla en contra de los apelados, la dejaron desprovista de remedio alguno. Por último, la apelante alega que, "[e]l Municipio de Dorado alegó que otra Corporación, ILA, LLC, era el custodio y

---

[15] Íd., Anejo 6, pág. 35.
[16] Íd., Anejo 7, págs. 37-56.
[17] Íd., pág. 38.
[18] Íd., pág. 39.
[19] Íd.

estaba a cargo del Gran Parque Agroturístico, Ecológico y Recreativo "El Dorado" y no menciona a Inter-Island Amusement, Inc.", sin hacer alusión a Inter-Island.[20]

El 27 de noviembre de 2023, el TPI notificó una *Resolución y Orden* del 21 de noviembre de 2023, declarando "**No Ha Lugar**" a *Moción de Reconsideración.*[21]

El 5 de diciembre de 2023, la apelante presentó una *Moción Solicitando Enmendar Demanda* en la que solicitó:

> 1.  Que en el presente caso recientemente y a través del descubrimiento de prueba y la contestación a la Demanda de las partes codemandadas, Triple-S Propiedad, Inc. y el Municipio de Dorado, **hemos advenido en conocimiento de la responsabilidad solidaria en el caso de epígrafe la compañía llamada IIA, LLC, quien a través de la codemandada Jennifer Quintero Garriga, el 9 de septiembre de 2022, firmaron un contrato con el Municipio de Dorado intitulado "*Contrato de Arrendamiento Evento Navitown Gran Parque Agroturístico, Ecológico y Recreativo 'El Dorado' Carr. 165 Bo. Mameyal Dorado Puerto Rico*" para que IIA, LLC planificara, organizara, produjera, contratara personal y promocionara el evento Navitown del 15 de diciembre de 2022 hasta el 8 de enero de 2023.**

> 2.  **A pesar que la contestación a la demanda de Triple-S Propiedad, Inc. y el Municipio de Dorado mencionan una corporación llamada ILA, LLC como la compañía que contrató con el municipio** para organizar, producir y llevar a cabo la actividad, **luego de una investigación encontramos que la compañía que contrató con el Municipio de Dorado es IIA, LLC y no ILA, LLC**. **Véase Alegación número 9 de la Contestación a Demanda de las partes co-demandadas Triple-S Propiedad, Inc. y el Municipio de Dorado**.

> . . . .[22]

En vista de ello, la señora Simón Valle solicitó al TPI enmendar la *Demanda* a esos efectos y expedir los emplazamientos para emplazar a IIA, LLC.

Posteriormente, el TPI notificó una *Orden* el 5 de diciembre de 2023 otorgándole a los co-demandados hasta el 26 de diciembre de

---

[20] Íd., pág. 41.
[21] Íd., Anejo 8, pág. 58.
[22] Íd., Anejo 9, pág. 59. (Énfasis suplido y subrayado en el original).

2023 para oponerse o reaccionar a la *Moción Solicitando Enmendar Demanda*.[23] Al día de hoy no ha sido resuelta dicha moción.

El 7 de diciembre de 2023, la señora Simón Valle le envió a la representación legal del Municipio de Dorado y Triple-S un breve requerimiento de producción de documentos.[24]

En desacuerdo con el dictamen alcanzado mediante la *Sentencia Parcial*, el 26 de diciembre de 2023, la señora Simón Valle acudió ante este foro mediante recurso de apelación y formuló los siguientes señalamientos de error:

PRIMERO

Erró el TPI al dictar Sentencia Parcial basado en la Regla 10.2 (5) de Procedimiento Civil al concluir que los demandados no responden solidariamente con Inter-Island Amusement, Inc., el Municipio de Dorado y Triple-S Propiedad, Inc.

SEGUNDO

Erró el TPI al determinar que la demandante venía obligada a cumplir con el mandato del Artículo 12.04 de [l]a Ley General de Corporaciones de Puerto Rico.

TERCERO

Erró el TPI al no considerar la moción de reconsideración – es decir que las alegaciones de la demanda contra los codemandados en su aspecto personal son suficientes para no desestimar la demanda, que la corporación bajo la cual el TPI se basó para desestimar fue disuelta por el Departamento de Estado el 30 de marzo de 2022 mucho antes del accidente (27 de diciembre de 2022), que luego del accidente la codemandada Jennifer M. Quintero se presentó y caracterizó como la encargada y productora del evento y no menciona corporación alguna, que Inter-Island Amusement, Inc. no ha contestado la demanda, y (5) el Municipio de Dorado en su contestación a la demanda no menciona a Inter-Island Amusement, Inc., como custodio o encargado del Gran Parque Agroturístico, Ecológico y Recreativo de Dorado para la fecha del accidente, y menciona una corporación (ILA, LLC) que no aparece registrada en el Departamento de Estado.

---

[23] Íd., Anejo 10, pág. 70.
[24] Íd., Anejo 11, pág. 71.

En torno a ello, emitimos una *Resolución* el 10 de enero de 2024, por la cual le concedimos a la parte apelada hasta el 25 de enero de 2024 para presentar su alegato en oposición.

El 23 de enero de 2024, la señora Quintero Garriga y el señor Pastrana Betancourt presentaron un *Alegato en Oposición*, mediante el cual arguyeron que la apelante no argumentó en su escrito cómo las expresiones públicas de la señora Pastrana Garriga incluyen una admisión expresa de responsabilidad personal y excluyen el deber de cumplir con el mandato del Artículo 12.04 de la Ley Núm. 164-2009, *supra*, sec. 3784. También sostuvieron que la señora Simón Valle ignora la continuidad de la personalidad jurídica de una corporación, la cual se extiende por tres (3) años luego de la disolución, a tenor con el Artículo 9.08 de la Ley Núm. 164-2009, *supra*, sec. 3708; y según las alegaciones de los apelados, el que Inter-Island no haya contestado la *Demanda* se debe a que no la emplazó dentro de los 120 días, a tenor con la Regla 4.3 de Procedimiento Civil, *supra*, R. 4.3.

Posteriormente, el 29 de enero de 2024, la apelante presentó una *Moción para Alertar al Tribunal sobre Diligenciamientos de Emplazamiento de las Partes Demandadas* a la cual anejó los emplazamientos de los co-demandados incluyendo el de Inter-Island, quien fue emplazada el 18 de agosto de 2023. De este modo se puede colegir que, contrario a lo que alegan la señora Quintero Garriga y el señor Pastrana Betancourt; esto es, que la apelante no emplazó a Inter-Island dentro de los 120 días dispuestos por las Reglas de Procedimiento Civil, *supra*, R. 4.3, esta entidad sí fue emplazada y ocurrió el mismo día que la apelante emplazó al señor Pastrana Betancourt.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. Además, tras un análisis objetivo, sereno y cuidadoso de la totalidad del expediente, en

adelante, pormenorizamos las normas jurídicas, máximas y doctrinas aplicables a los errores imputados.

**III.**

**A.**

Nuestro más alto foro ha expresado que una persona contra quien se presentó una reclamación judicial puede solicitar la desestimación del pleito "cuando surja de las alegaciones de la demanda que alguna defensa afirmativa derrotará la pretensión del demandante". ***Eagle Security Police, Inc. v. Dorado***, 211 DPR 70, 83 (2023); véase, además, ***Trans-Oceanic Life Ins. v. Oracle Corp.***, 184 DPR 689, 701 (2012). Específicamente, el inciso (5) de la Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2, permite la radicación de una solicitud de desestimación bajo la defensa de que la demanda "deja de exponer una reclamación que justifique la concesión de un remedio". ***Eagle Security Police, Inc. v. Dorado***, supra, pág. 83. Luego de ello, los tribunales estarán "obligados a tomar como ciertos —y de la manera más favorable a la parte demandante— todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente". ***Eagle Security Police, Inc. v. Dorado***, Íd., pág. 84; véase, además, ***González Méndez v. Acción Social et al.***, 196 DPR 213, 234 (2016); ***Rivera Sanfeliz et al. v. Jta. Dir. Firstbank***, 193 DPR 38, 49 (2015). También deberán "interpretar las alegaciones en forma conjunta y liberal. . .". ***González Méndez v. Acción Social et al.***, supra, pág. 234; ***Torres, Torres v. Torres Serrano***, 179 DPR 481, 501-502 (2010); ***Aut. Tierras v. Moreno & Ruiz Dev. Corp.***, 174 DPR 409, 428-429 (2008); ***Roldán Rosario v. Lutron, S.M., Inc.***, 151 DPR 883, 890 (2000). En vista de ello, "[l]a demanda no deberá desestimarse a menos que se demuestre que el demandante no tiene derecho a remedio alguno bajo cualesquiera hechos que pueda probar".

*Trinidad Hernández v. ELA*, 188 DPR 828, 833-834, (*citando a Colón v. Lotería*, 167 DPR 625, 649 (2006)).

**B.**

Por otro parte, la Ley Núm. 164-2009, *supra,* rige los asuntos relativos a la "existencia y vida jurídica de las corporaciones privadas". *Eagle Security Police, Inc. v. Dorado*, supra, pág. 85; *Dorado del Mar Estates Homeowners Association, Inc. v. Weber*, 203 DPR 31, 45 (2019). Según dispone su Artículo 1.05, *supra,* sec. 3505, el proceso por el cual comienza la personalidad jurídica de una corporación surge con la otorgación y radicación del certificado de incorporación, junto al pago de los derechos requeridos por ley, y posteriormente, por medio del registro y emisión del certificado de incorporación. Véase, además, Ley Núm. 164-2009, *supra,* secs. 3503-3504; *Eagle Security Police, Inc. v. Dorado*, supra, en la pág. 86 (*citando a* Carlos Díaz Olivo, *Corporaciones: Tratado sobre Derecho Corporativo*, 2da ed. rev., Editorial AlmaForte, Ed., 2018, págs. 103-104); *Dorado del Mar Estates Homeowners Association, Inc. v. Weber*, supra, pág. 45. Esta personalidad jurídica, a su vez, será "**distinta y separada de sus inversionistas**". *Eagle Security Police, Inc. v. Dorado*, supra, pág. 86 (*citando a* Carlos Díaz Olivo, *supra,* pág. 120); véase, además, *Miramar Marine v. Citi Walk*, 198 DPR 684, 691 (2017); *Librotex, inc. v. A.A.A.*, 138 DPR 938, 947 (1995). Por medio de esta, las corporaciones ostentarán legitimación activa para "otorgar contratos y comparecer a una acción civil como demandante o demandado bajo su nombre corporativo o participar en cualquier procedimiento civil, administrativo, de arbitraje o de cualquier otro género". Ley Núm. 164-2009, *supra,* sec. 3522; véase, además, *Eagle Security Police, Inc. v. Dorado*, supra, pág. 87; *Multinational Ins. v. Benítez y Otros*, 193 DPR 67, 78-79 (2015). También "queda[rá] facultada para ejercer los derechos y poderes

conferidos por los Arts. 2.01 y 2.02 de la Ley de Corporaciones [*supra*, secs. 3521-3522]". ***Eagle Security Police, Inc. v. Dorado***, supra, pág. 87.

Como norma general, los accionistas no responden personalmente por las deudas de una corporación. ***Santiago et al. v. Rodríguez et al.***, 181 DPR 204, 223 (2011) (*citando a* Carlos Díaz Olivo, *supra*, pág. 119). De lo contrario, procede desgarrar el velo corporativo, norma que se rige por los siguientes principios fundamentales:

1. La aplicación de la doctrina depende de los hechos específicos de cada caso;

2. El ignorar la entidad corporativa constituye la excepción a la regla;

3. La corporación posee una personalidad jurídica separada y distinta de sus accionistas y la regla general es al efecto de que la existencia de la corporación, independientemente de sus accionistas no puede ser ignorada o descartada;

4. El fracaso de la corporación en su gestión económica, su administración deficiente, y la falla en observar las formalidades corporativas no son por sí mismos razón suficiente para desconocer la entidad;

5. El mero hecho de que una persona sea el único accionista de una corporación no conlleva de por sí la imposición de responsabilidad individual;

6. El peso de la prueba recae sobre la parte que busca descorrer el velo y propone la imposición de responsabilidad individual a los accionistas;

7. El peso de la prueba no se descarga con la mera alegación de que la empresa es un alter ego de los accionistas;

8. La prueba del que solicita el desconocimiento debe ser prueba fuerte y robusta.

9. Corresponde a la parte que propone el levantamiento del velo presentar prueba que demuestre que:

    (i)     existe tal identidad de interés y propiedad, que la corporación y la persona de sus accionistas se hallen confundidas; y

    (ii)    que los hechos sean de tal naturaleza que el sostener la ficción de la corporación derrota la política pública por equivaler a sancionar la

> utilización de la corporación para perpetuar un fraude o promover una injusticia o ilegalidad.
>
> Carlos Díaz Olivo, *supra*, págs. 119-120; véase, además, ***Santiago et al. v. Rodríguez et al.***, supra, pág. 223; ***South Porto Rico Sugar Corp. v. Junta Azucarera***, 88 DPR 43, 57 (1963); ***Sucn. De Salvador Pérez y Perez et al. v. Tomás E. Gual y La Borinquen Furniture Co., Inc.***, 76 DPR 959, 964 (1954).

Respecto a descorrer el velo corporativo, nuestro más alto foro ha expresado que procede responsabilizar a los accionistas en su carácter personal cuando "los bienes de la entidad sean insuficientes, y se pruebe que se utilizó la figura corporativa para sancionar un fraude, promover una injusticia, evadir una obligación estatutaria, derrotar la política pública, justificar la inequidad o defender un crimen". Íd. Véase, además, ***Sucesión Santaella v. Srio. De Hacienda***, 96 DPR 442, 451-452 (1968); ***Díaz Aponte v. Comunidad***, 130 DPR 782, 798 (1992); véase, además, ***San Miguel Fertil. Corp. v. P.R. Drydock***, 94 DPR 424, 430 (1967). También procede cuando la identidad de la corporación y la persona se confunden. Carlos Díaz Olivo, *supra*, págs. 120-121, 140-141; ***Sucn. De Salvador Pérez y Perez et al. v. Tomás E. Gual y La Borinquen Furniture Co., Inc.***, supra, pág. 964.

En otras palabras, mientras no se active la doctrina de descorrer el velo corporativo, los oficiales, directores y accionistas ostentarán una protección contra reclamaciones por deudas u obligaciones de la compañía:

> [H]asta que se dicte sentencia final en contra de la corporación, y que la ejecución de la misma permanezca insatisfecha ni después de tres (3) años a partir de la fecha de tal sentencia, y cualquier oficial, director o accionista podrá levantar cualquier defensa que la corporación hubiere podido levantar contra tal deuda u obligación. Ley Núm. 164-2009, *supra*, sec. 3784; ***Eagle Security Police, Inc. v. Dorado,*** supra, pág. 90***; Miramar Marine v. Citi Walk,*** supra, pág. 693.

Sin embargo, lo anterior no aplicará a controversias que versen "contra oficiales o directores de una corporación que estén en proceso de disolución por mala administración, en el ejercicio de

sus funciones con arreglo al Capítulo IX de esta Ley. 14 LPRA sec. 3784". *Íd.*; véase, además, *La Comisión de los Puertos de Mayagüez v. González Freyre*, 211 DPR 579 (2023).

### C.

En otros términos, el Artículo 12.04 (B) de la Ley Núm. 164-2009, *supra*, sec. 3784, dispone que:

> No se entablará pleito alguno contra ningún oficial, director o accionista por deuda u obligación de la corporación de la cual es oficial, director o accionista, hasta que se dicte sentencia final en contra de la corporación, y que la ejecución de la misma permanezca insatisfecha ni después de tres (3) años a partir de la fecha de tal sentencia, y cualquier oficial, director o accionista podrá levantar cualquier defensa que la corporación hubiere podido levantar contra tal deuda u obligación. . . .

En vista de ello, al menos que se cumpla con la excepción a este artículo; a saber: cuando los oficiales o directores de una corporación "est[á]n en proceso de disolución por mala administración, en el ejercicio de sus funciones con arreglo al Capítulo IX de esta Ley", estos quedarán cobijados por la Ley Núm. 164-2009, *supra*, y no podrán ser demandados para reclamar derecho o obligación alguna hasta que se dicte una sentencia final en contra de la corporación y "la ejecución de la misma permanezca insatisfecha ni después de tres (3) años a partir de la fecha de tal sentencia. . .". *Íd.*

### D.

Ahora bien, la vida de la corporación puede advenir a su final por medio de la disolución. Ley Núm. 164-2009, *supra*, sec. 3705; véase, además, *Miramar Marine v. Citi Walk*, supra, págs. 691-692; *Eagle Security Police, Inc. v. Dorado*, supra, pág. 90. Dicho evento ocurrirá cuando el certificado de disolución sea eficaz. Ley Núm. 164-2009, *supra*, sec. 3705. La Ley Núm. 164-2009, *Íd.*, también dispone que la resolución mediante la cual se autorice la disolución "podrá proveer que, no obstante la autorización o

consentimiento a la disolución propuesta por parte de los accionistas, o los miembros de una corporación sin acciones, según el Artículo 9.06 de esta Ley, la junta de directores o el organismo directivo podrá abandonar dicha disolución propuesta sin mediar acto adicional de los accionistas o los miembros". *Íd.* Además, el Artículo 11.01 de la Ley Núm. 164-2009, *supra,* sec. 3761, igualmente permite la revocación de la disolución voluntaria.

### E.

Si bien la vida de la corporación finaliza con la disolución, su personalidad jurídica persiste por tres (3) años adicionales, a partir de su extinción, disolución o de cualquier otro término mayor dispuesto por el TPI. Ley Núm. 164-2009, *supra,* sec. 3708; véase, además, *Íd.* sec. 3705; ***Eagle Security Police, Inc. v. Dorado***, supra, pág. 90; ***Miramar Marine v. Citi Walk***, supra, pág. 693. Aun así, el propósito de mantener la personalidad jurídica de la corporación se limita a unos actos en particulares:

> [L]levar adelante los pleitos entablados por la corporación y de proseguir con la defensa de los pleitos entablados contra ella, ya sean civiles, criminales o administrativos, así como a los efectos de liquidar y terminar el negocio, de cumplir con sus obligaciones y de distribuir a los accionistas los activos restantes. Íd.

Sin embargo, el Artículo 9.08 de la Ley Núm. 164-2009, *supra,* sec. 3708, expresamente mandata que, "[n]o podrá continuar la personalidad jurídica con el propósito de continuar los negocios para los cuales se creó dicha corporación". ***Miramar Marine v. Citi Walk,*** supra, págs. 693-694. En otras palabras, la personalidad jurídica de la corporación será limitada a unos objetivos específicos, excluyendo el uso de esta para continuar proveyendo los servicios para los cuales se estableció la entidad. ***Eagle Security Police, Inc. v. Dorado,*** supra, pág. 90; ***Miramar Marine v. Citi Walk,*** supra, pág. 693.

### IV.

En el caso de marras, el TPI dictó una *Sentencia Parcial* por la cual desestimó una *Demanda* en reclamo de daños y perjuicios promovida por la señora Simón Valle en contra de la señora Quintero Garriga y el señor Pastrana Betancourt. El foro primario basó su determinación en que la parte apelante "no ha cumplido con el mandato del Artículo 12.04 de la Ley General de Corporaciones de Puerto Rico. La parte demandante tampoco ha alegado los elementos necesarios para que aplique alguna de las excepciones al mencionado artículo".[25] Consecuentemente, concluyó que los apelados no son solidariamente responsables a los demás co-demandados.

En desacuerdo, la Sra. Simón Valle le imputó al foro primario la comisión de tres (3) errores.

Se alegó que erró el TPI al dictar la *Sentencia Parcial* por la cual determinó que los apelados no responden solidariamente con Inter-Island, el Municipio de Dorado y Triple-S. Según expuso en su recurso de apelación, el foro primario no consideró las alegaciones 25, 27 y 28 de la *Demanda,* las cuales alegan que los apelados "eran los administradores, productores, coordinadores y encargados de la 8va Edición de Navitown".[26] Es decir, la apelante alegó que, según unos artículos periodísticos de noticias de Primera Hora y Telemundo, la señora Quintero Garriga se representó como la productora del evento y no actuó por medio de una corporación. Así se identificó ella públicamente en los mencionados artículos. Además, la señora Simón Valle alegó que, a tenor con lo reclamado en la alegación 27 de la *Demanda,* los apelados y demás co-demandados son responsables por el mantenimiento de las machinas. Sin embargo, la propia apelante admite desconocer si ellos tenían conocimiento del mal funcionamiento de la machina, y

---

[25] Íd., Anejo 6, pág. 35.
[26] Íd., Anejo 1, pág. 5.

si estos brindaban el mantenimiento requerido y adecuado a la misma. La apelante también contendió, por medio de la alegación 28 de la *Demanda* que, los alegados daños sufridos por la señora Simón Valle eran previsibles, y los apelados no sometieron evidencia alguna, tal como el supuesto contrato entre Inter-Island y el Municipio de Dorado, para liberarlos de responsabilidad.

En otros términos, y como segundo error, la señora Simón Valle arguyó que, contrario a la determinación del foro primario, ella no venía obligada a cumplir con el Artículo 12.04 de la Ley Núm. 164-2009, *supra.* Lo anterior pues, según alega la apelante, la señora Quintero Garriga no "indicó o infirió que estuviera hablando en nombre de una corporación", y se "presentó y caracterizó ante la demandante como la productora y encargada del evento" frente a los medios noticiosos.[27] Además, la apelante sostuvo que, al comunicarse con la apelada, esta "nunca mencionó corporación alguna",[28] y "[l]a representación que ofreció la codemandada a la parte demandante fue que ella era la responsable del evento, no una corporación. Tampoco mencionó que estaba comunicándose en representación de un tercero".[29]

En su último error, la apelante imputó al foro primario que erró al no conceder su *Moción de Reconsideración,* pues (i) Inter-Island fue disuelta por el Departamento de Estado el 30 de marzo de 2022 antes del supuesto incidente ocurrido el 27 de diciembre de 2022; (ii) la señora Quintero Garriga se presentó y caracterizó como productora y encargada del evento *Navitown* sin mencionar

---

[27] Íd., págs. 9-10; Véase, además, Apéndice de la Apelación, Anejo 7, pág. 47 ("A horas de suscitarse el accidente en el que cuatro personas resultaron heridas tras el fallo de una machina, **la productora de Navitown, Jennifer Quintero**, reiteró que toman todas las medidas necesarias para ofrecer seguridad a los visitantes".) (Énfasis suplido); Íd., pág. 49 ("En cuanto a las machinas específicamente, **la productora** indicó que, aunque ya habían sido revisadas y certificadas para la celebración, ese proceso se estaba haciendo una vez más, 'para estar seguros'") (Énfasis suplido); Íd., pág. 51 ("**La productora** de 'Navitown' lamentó en incidente. . .".) ((Énfasis suplido).
[28] Recurso de la Apelación, pág. 11.
[29] Íd.

corporación alguna; (iii) al desestimar la *Demanda* contra los aquí apelados sin que Inter-Island contestara la misma, el TPI dejó desprovisto a la señora Simón Valle de remedio alguno; (iv) y el Municipio de Dorado no mencionó a Inter-Island como encargada o custodia del lugar del evento en su *Contestación a Demanda* sino a otra entidad, no co-demandada, llamada ILA, LLC.

Respecto a la disolución de Inter-Island, la apelante anejó a la *Moción de Reconsideración* los *Artículos de Disolución* de esta entidad de la cual se desprende palmariamente que la co-demandada fue disuelta el 30 de marzo de 2022; es decir, previo al alegado incidente ocurrido el 27 de diciembre de 2022. Por ello, la señora Simón Valle arguyó que, "[c]ualquier contrato o acuerdo de la mencionada corporación para esta fecha es nulo. Cualquier contrato que los codemandados hayan firmado en representación de Inter-Island Amusement, Inc. es nulo e inexistente".[30]

Por otro lado, alegó la señora Simón Valle que, a pesar de haber emplazado a Inter-Island conforme a derecho el 18 de agosto de 2023, el mismo día que emplazó al apelado, y aunque ambos co-demandados aparecen como los oficiales y agentes residentes de esta corporación, Inter-Island no ha contestado la *Demanda*. Por ende, al desestimar la *Demanda*, el TPI la dejó desprovista de remedio.

Adviértase que la apelante arguyó que el Municipio de Dorado sostuvo que ILA, LLC y no Inter-Island era la entidad custodio a cargo del lugar del evento. Además, según argumentó la señora Simón Valle, la apelante recientemente advino en conocimiento de que IIA, LLC, no ILA, LLC ni Inter-Island, firmó un contrato titulado *Contrato de Arrendamiento Evento Navitown Gran Parque Agroturístico, Ecológico y Recreativo "El Dorado' Carr."* 165 Bo. *Mameyal Dorado Puerto Rico* con el Municipio de Dorado el 9 de

---

[30] Apelación, pág. 10.

septiembre de 2022. La apelante encontró que, según surge del Departamento de Estado, la presidenta y tesorera de IIA, LLC **es la propia señora Quintero Garriga**. No obstante, el 7 de diciembre de 2023, la señora Simón Valle solicitó al Municipio de Dorado y Triple-S un requerimiento de documentos <u>para que produzcan el alegado contrato celebrado entre el Municipio de Dorado e IIA, LLC</u>, la póliza de seguro, si alguna, y los documentos complementarios para el perfeccionamiento del alegado contrato, enmienda o anejo relacionado al contrato. Al día de hoy dicho contrato no ha sido producido.[31]

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica apelativa adjudicativa, resulta forzoso concluir que no procede la desestimación de la *Demanda* contra la señora Quintero Garriga y el señor Pastrana Betancourt <u>en esta etapa de los procedimientos,</u> pues existe una controversia real de hecho sobre cuál fue la entidad que contrató con el Municipio de Dorado para "organizarse, producir y llevar a cabo" el evento de *Navitown*.[32] Esta controversia debe ser resuelta previo a determinar si a los apelados les cobija la protección contra posibles reclamaciones como oficiales de Inter-Island, de ILA, LLC, o de IIA, LLC en el caso de la señora Quintero Garriga; o si alguna, a tenor con el Artículo 12.04 de la Ley Núm. 164-2009, *supra*, y, por ende, no son solidariamente responsables ante la apelante.

Según argumenta la señora Simón Valle en la *Demanda*, la entidad alegadamente responsable de sus supuestos daños y de la cual presentó evidencia para sostener que fue disuelta es Inter-Island. De hecho, tanto la apelante como los apelados están de acuerdo con que la señora Quintero Garriga y el señor Pastrana

---

[31] Tampoco consta en el expediente digital del caso contenido en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[32] Apéndice de la Apelación, Anejo 9, pág. 59.

Betancourt son oficiales y representantes de Inter-Island. Sin embargo, de la *Contestación a Demanda* se desprende el nombre de una compañía distinta llamada ILA, LLC. Conforme al Municipio de Dorado y Triple-S, esta entidad fue la corporación que suscribió el contrato con el Municipio de Dorado para "la custodia y control del Gran Parque Agroturístico, Ecológico y Recreativo 'El Dorado'", "la encargada de contratar el equipo, personal, recursos técnicos y propiedad mueble para la celebración del evento NAVITOWN", y "la encargada de organizar, producir y llevar a cabo dicha actividad para lo cual las partes pactaron un contrato".[33] A pesar de ello, la apelante arguye haber llevado a cabo una investigación previa a la presentación de la *Apelación*, mediante la cual descubrió que una entidad que no es Inter-Island ni ILA, LLC, sino IIA, LLC, se encargó de firmar el contrato con el Municipio de Dorado para "planifica[r], organiza[r], produ[cir], contrata[r] personal y promociona[r] el evento Navitown del 15 de diciembre de 2022 hasta el 8 de enero de 2023".[34] A diferencia de ILA, LLC, la señora Simón Valle alegó que IIA, LLC aparece en el Departamento de Estado. Según alega la apelante, la agente residente y oficial es la señora Quintero Garriga solamente. Por lo tanto, del expediente no surge claramente cuál de todas las entidades mencionadas por las partes estuvo a cargo del evento de *Navitown*: la apelante alega que es IIA, LLC, el Municipio de Dorado arguye que es ILA, LLC y los apelados sostienen que fue Inter-Island. En otras palabras, ninguna de las partes nos colocó en posición para determinar cuál de las corporaciones manejó, controló y estuvo a cargo de dicho evento. Por lo cual el TPI debe resolver este asunto como cuestión de umbral.

A pesar de lo anterior, del derecho aplicable surge palmariamente que una entidad disuelta, al menos que haya sido

---

[33] Íd., Anejo 5, págs. 19-20.
[34] Apelación, págs. 13-14.

revocada, no puede continuar con los negocios para los cuales fue creada. Véase, Ley Núm. 164-2009, *supra*, sec. 3708. El Artículo 9.08 de la Ley Núm. 164-2009, *Íd.*, es claro en que el propósito de mantener la personalidad jurídica viva, después de la disolución, es para defender la entidad en pleitos presentados en su contra, presentar pleitos a favor de la corporación o llevar "a los efectos de liquidar y terminar el negocio, de cumplir con sus obligaciones y de distribuir a los accionistas los activos restantes". *Íd.* En otras palabras, si la entidad continúa disuelta, es forzoso determinar que Inter-Island no tenía la capacidad de contratar con el Municipio de Dorado el aludido contrato de arrendamiento cuando fue disuelta el 30 de marzo de 2022. No obstante, dicho asunto no ha sido resuelto por el foro *a quo*.

Por lo tanto, en esta etapa de los procedimientos, este foro *ad quem* no puede resolver si los apelados son responsables solidariamente ante la señora Simón Valle o si, por el contrario, la apelante venía obligada a cumplir con el mandato del Artículo 12.04 de la Ley Núm. 164-2009, *supra*.

De los autos ante nos resolvemos que se cometieron los errores señalados, por lo cual el TPI incidió.

Por todo lo anterior, corresponde revocar la *Sentencia Parcial* y devolver el caso al foro primario para la continuación de los procedimientos.

## V.

Por los fundamentos que anteceden, se revoca la *Sentencia Parcial* apelada, y se devuelve el caso al TPI para la continuación de los procedimientos, conforme con lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones